702 P.2d 1341

**Ed HUFF and Joyce Huff, husband and wife, Plaintiffs/Appellants,**

v.

**BEKINS MOVING & STORAGE CO., an Arizona corporation; Bekins Van Lines Co., a foreign corporation, Defendants/Appellees.**

**No. 2 CA–CIV 5000.**

Court of Appeals of Arizona, Division 2.

Jan. 25, 1985.

Paul G. Rees, Jr., Tucson, H. Micheal Wright, Mesa, for plaintiffs/appellants.

Rawlins, Burrus & Lewkowitz, P.C. by Chester J. Peterson, Phoenix, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

This case was resolved in favor of defendant (Bekins) on its motion for summary judgment. Plaintiffs (Huffs) seek reversal on appeal. We reverse.

Huffs filed on November 7, 1980, a 12-count complaint charging Bekins with damage to and loss of household goods placed in storage in Yuma for approximately a year and then shipped in July 1980, to Gilbert, Arizona. Bekins' motion for summary judgment asserted that Huffs failed to comply with two conditions precedent required by their storage and moving con-

tracts and tariff, i.e., (1) failure to present written claims to Bekins within 90 days and (2) failure to pay Bekins for services rendered.

## THE FACTS

On June 4, 1979, the parties entered a contract, Waybill No. P10483, wherein Bekins undertook to store household goods for Huffs in Yuma. On June 26, 1980, the parties signed another contract, Nos. P10566, P10565, covering the move of the household goods from storage in Yuma to the Huffs' newly constructed home at Gilbert, Arizona. The waybills signed by Huffs require "within ninety days after such date [of delivery] the Customer presents a claim in writing therefor to the Company, accompanied by paid bill or receipt for charges. . . ." A truckload of the household goods was delivered to Gilbert on July 3, 1980. Huffs were aware that when the driver arrived, the balance on the storage account had to be paid as well as the shipping charge. Accordingly, a check for $2,078.64 was given the driver upon arrival, and the goods were unloaded. Because they discovered only a part of the goods was delivered and those were damaged, the Huffs stopped payment on the check given the driver. Mr. Huff explained in his deposition that he called Bekins' manager in Yuma and advised that he was stopping payment on the check until the second load arrived and he could find out what was broken and damaged.

The balance of the goods was delivered on July 12, 1980, and was received by Mrs. Huff's sister who gave a check for $163 for services rendered. Payment was stopped on this check also. Huffs have never paid for the services for which the two checks were given.

Huffs notified Bekins' Yuma manager on July 8, 1980, that some of the goods were damaged. The manager advised Huff that claim forms would be sent and that "the claim forms would have to be filled out and submitted." He also told Huffs it would be necessary for the bill to be paid before Bekins would do anything. Claim forms were received by Huffs from Bekins around July 25, 1980, but nothing was done with them. Included with the claim forms was a pamphlet entitled, "How to File a Claim" and a return envelope addressed to Consumer Claims Agency in Los Angeles. Additional claim forms were sent to Huffs and received by them on or about August 7, 1980, and nothing was done with them either. Huffs filed suit on November 7, 1980, alleging breach of contract for damage and loss of personal property in excess of $10,000. Huffs received still another set of claim forms on or about November 29, 1980, and did not fill them out but turned them over to counsel.

On March 24, 1981, Huffs' attorney sent verified answers to interrogatories to Bekins' attorney and attached Bekins' Statement of Claim forms which detailed the damage to Huffs' property and the lost items. On May 11, 1981, pursuant to a request for production of documents and in connection with the deposition of Mr. Huff, a signed statement of claim forms prepared by Mr. Huff was produced.

## ERROR BY THE TRIAL COURT

Bekins' motion for summary judgment was granted based on Huffs' failure to comply with the two alleged conditions precedent: (1) present a claim in writing within 90 days and (2) pay the bill for services. This appeal follows.

■ On review, this court must view the facts in the light most favorable to appellants (Huffs) to determine if no genuine issue of material fact exists. *Portonova v. Wilkinson*, 128 Ariz. 501, 627 P.2d 232 (1981). The salient facts are the alleged conditions precedent. If there are conditions precedent, were they complied with as a matter of fact and must they be complied with as a matter of law?

■ The facts here show that the consignee has consistently refused to pay the

transportation bill although they were advised that they had to do so prior to any action on their claim. However, the consignees may not have to make such payment as a condition precedent if the condition is found to be an unenforceable provision in a contract of adhesion.

 The California case of *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal. Rptr. 604, 623 P.2d 165 (1981), contains a good discussion on contracts of adhesion. That case points out that a contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or to reject it. The concept of free contracting by parties of equal or near equal bargaining strength nowadays is often found to be illusory due to the realities brought about by increasing concentrations of economic and other power. While such contracts seem to be necessary they can be dangerous and can sometimes be oppressive and overreach. However, just because a contract is described as a contract of adhesion does not mean that it is unenforceable according to its terms unless certain other factors are present. As the court said in *Graham v. Scissor-Tail, Inc.*, supra:

> "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. [citations omitted] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable'." 171 Cal.Rptr. at 612, 623 P.2d at 172–173.

There is no doubt that the contracts here are contracts of adhesion.

The condition precedent of payment is contained in small print in both the way-bill and the bill of lading. There is no evidence that these provisions were brought to the attention of the consignees prior to signing the contracts.

Because there is an unresolved factual issue as to the reasonable expectations of the consignees in regard to the necessity of payment as a precondition to the processing of the claim, we believe the summary judgment was improperly granted.

The judgment is reversed and in accordance with A.R.S. § 12–341.01, Huffs are awarded attorneys fees incurred in connection with this appeal.

BIRDSALL and HOWARD, JJ., concur.