840 P.2d 1013

**Melinda Kay BROEMMER, Plaintiff–Appellant,**

v.

**ABORTION SERVICES OF PHOENIX, LTD., an Arizona corporation, Defendant–Appellee.**

**No. CV–91–0322–PR.**

Supreme Court of Arizona, En Banc.

Oct. 13, 1992.

Reconsideration Denied Dec. 1, 1992.

Fogel and Lamber, P.A. by Dennis M. Lamber and Kenneth J. Love and Gage and Mathers, Ltd. by G. David Gage, Phoenix, for plaintiff-appellant.

Snell & Wilmer by Barry D. Halpern, John C. West, Bob J. McCullough, Robert H. Oberbillig, Phoenix, for defendant-appellee Abortion Services of Phoenix.

The Langerman Law Offices by Amy G. Langerman, Phoenix, for amicus curiae Ariz. Trial Lawyers Ass'n.

Bob Gibbons, Austin, Tex., and Jeffrey R. White, Washington, D.C., for amicus curiae Ass'n of Trial Lawyers of America.

Snell & Wilmer by Lawrence F. Winthrop, Phoenix, for amicus curiae Ariz. Medical Ass'n.

MOELLER, Vice Chief Justice.

## STATEMENT OF THE CASE

Melinda Kay Broemmer (plaintiff) asks this court to review a court of appeals opinion that held that an "Agreement to Arbitrate" which she signed prior to undergoing a clinical abortion is an enforceable, albeit an adhesive, contract. *Broemmer v. Otto*, 169 Ariz. 543, 821 P.2d 204 (1991). The opinion affirmed the trial court's grant of summary judgment in favor of Abortion Services of Phoenix and Dr. Otto (defendants). Because we hold the agreement to arbitrate is unenforceable as against plaintiff, we reverse the trial court and vacate in part the court of appeals opinion. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

In December 1986, plaintiff, an Iowa resident, was 21 years old, unmarried, and 16 or 17 weeks pregnant. She was a high school graduate earning less than $100.00 a week and had no medical benefits. The father-to-be insisted that plaintiff have an abortion, but her parents advised against it. Plaintiff's uncontested affidavit describes the time as one of considerable confusion and emotional and physical turmoil for her.

Plaintiff's mother contacted Abortion Services of Phoenix and made an appointment for her daughter for December 29, 1986. During their visit to the clinic that day, plaintiff and her mother expected, but did not receive, information and counselling on alternatives to abortion and the nature of the operation. When plaintiff and her mother arrived at the clinic, plaintiff was escorted into an adjoining room and asked to complete three forms, one of which is the agreement to arbitrate at issue in this case. The agreement to arbitrate included language that "any dispute aris[ing] between the Parties as a result of the fees and/or services" would be settled by binding arbitration and that "any arbitrators appointed by the AAA [American Arbitration Association] shall be licensed medical doctors who specialize in obstetrics/gyne-

cology." The two other documents plaintiff completed at the same time were a 2-page consent-to-operate form and a questionnaire asking for a detailed medical history. Plaintiff completed all three forms in less than 5 minutes and returned them to the front desk. Clinic staff made no attempt to explain the agreement to plaintiff before or after she signed, and did not provide plaintiff with copies of the forms.

After plaintiff returned the forms to the front desk, she was taken into an examination room where pre-operation procedures were performed. She was then instructed to return at 7:00 a.m. the next morning for the termination procedure. Plaintiff returned the following day and Doctor Otto performed the abortion. As a result of the procedure, plaintiff suffered a punctured uterus that required medical treatment.

Plaintiff filed a malpractice complaint in June 1988, approximately 1½ years after the medical procedure. By the time litigation commenced, plaintiff could recall completing and signing the medical history and consent-to-operate forms, but could not recall signing the agreement to arbitrate. Defendants moved to dismiss, contending that the trial court lacked subject matter jurisdiction because arbitration was required. In opposition, plaintiff submitted affidavits that remain uncontroverted. The trial court considered the affidavits, apparently treated the motion to dismiss as one for summary judgment, and granted summary judgment to the defendants. Plaintiff's motion to vacate, quash or set aside the order, or to stay the claim pending arbitration, was denied.

On appeal, the court of appeals held that although the contract was one of adhesion, it was nevertheless enforceable because it did not fall outside plaintiff's reasonable expectations and was not unconscionable. Following the court of appeals opinion, the parties stipulated to dismiss the Ottos from the lawsuit and from this appeal. We granted plaintiff's petition for review.

## ISSUE

Plaintiff presents 5 potential issues in her petition for review. Some of the parties and amici have urged us to announce a "bright-line" rule of broad applicability concerning the enforceability of arbitration agreements. Arbitration proceedings are statutorily authorized in Arizona, A.R.S. §§ 12–1501 to –1518, and arbitration plays an important role in dispute resolution, as do other salutary methods of alternative dispute resolution. Important principles of contract law and of freedom of contract are intertwined with questions relating to agreements to utilize alternative methods of dispute resolution. We conclude it would be unwise to accept the invitation to attempt to establish some "bright-line" rule of broad applicability in this case. We will instead resolve the one issue which is dispositive: Under the undisputed facts in this case, is the agreement to arbitrate enforceable against plaintiff? We hold that it is not.

## DISCUSSION

### I. The Contract is One of Adhesion

When the facts are undisputed, this court is not bound by the trial court's conclusions and may make its own analysis of the facts or legal instruments on which the case turns. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). A.R.S. § 12–1501 authorizes written agreements to arbitrate and provides that they are "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus, the enforceability of the agreement to arbitrate is determined by principles of general contract law. The court of appeals concluded, and we agree, that, under those principles, the contract in this case was one of adhesion.

An adhesion contract is typically a standardized form "offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Wheeler v. St. Joseph Hosp.*, 63 Cal.App.3d 345, 356, 133 Cal.Rptr. 775, 783

(1976) (citations omitted); *see also Burkons v. Ticor Title Ins. Co. of Cal.*, 165 Ariz. 299, 311, 798 P.2d 1308, 1320 (App. 1989), *rev'd on other grounds*, 168 Ariz. 345, 813 P.2d 710 (1991) (essence of adhesion contract is that it is offered to consumers on essentially a "take it or leave it" basis). The *Wheeler* court further stated that "[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." 63 Cal. App.3d at 356, 133 Cal.Rptr. at 783 (citations omitted). Likewise, in *Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice*, 58 Va.L.Rev. 947, 988 (1972), Professor Stanley Henderson recognized "the essence of an adhesion contract is that bargaining position and leverage enable one party 'to select and control risks assumed under the contract.'" (quoting Friedrich Kessler, *Contracts of Adhesion—Some Thoughts About Freedom of Contract*, 43 Colum.L.Rev. 629 (1943)).

 The printed form agreement signed by plaintiff in this case possesses all the characteristics of a contract of adhesion. The form is a standardized contract offered to plaintiff on a "take it or leave it" basis. In addition to removing from the courts any potential dispute concerning fees or services, the drafter inserted additional terms potentially advantageous to itself requiring that any arbitrator appointed by the American Arbitration Association be a licensed medical doctor specializing in obstetrics/gynecology. The contract was not negotiated but was, instead, prepared by defendant and presented to plaintiff as a condition of treatment. Staff at the clinic neither explained its terms to plaintiff nor indicated that she was free to refuse to sign the form; they merely represented to plaintiff that she had to complete the three forms. The conditions under which the clinic offered plaintiff the services were on a "take it or leave it" basis, and the terms of service were not negotiable. Applying general contract law to the undisputed facts, the court of appeals correctly held that the contract was one of adhesion.

## II. Reasonable Expectations

 Our conclusion that the contract was one of adhesion is not, of itself, determinative of its enforceability. "[A] contract of adhesion is fully enforceable according to its terms [citations omitted] unless certain other factors are present which, under established legal rules—legislative or judicial—operate to render it otherwise." *Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604, 611, 623 P.2d 165, 172 (1981) (footnotes omitted). To determine whether this contract of adhesion is enforceable, we look to two factors: the reasonable expectations of the adhering party and whether the contract is unconscionable. As the court stated in *Graham:*

> Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [citations omitted] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable."

171 Cal.Rptr. at 612, 623 P.2d at 172–73 (citations omitted). *See also Huff v. Bekins Moving & Storage Co.*, 145 Ariz. 496, 498, 702 P.2d 1341, 1343 (App.1985).

Plaintiff argues that the trial court should have adopted, and we should now adopt, the analysis provided in *Obstetrics & Gynecologists v. Pepper*, 101 Nev. 105, 693 P.2d 1259 (1985), because it is virtually indistinguishable from the present case. In *Pepper*, the patient was required to sign an agreement before receiving treatment which waived her right to jury trial and submitted all disputes to arbitration. The clinic did not explain the contents of the agreement to the patient. The clinic's practice was to have staff instruct patients to complete two medical history forms and the agreement to arbitrate and to inform patients that any questions would be an-

swered. If the patient refused to sign the agreement, the clinic refused treatment.

The plaintiff in *Pepper* signed the agreement, but did not recall doing so, nor did she recall having the agreement explained to her. The plaintiff later brought suit for injuries suffered due to improperly prescribed oral contraceptives. The trial court made no findings of fact or conclusions of law, but the Nevada Supreme Court, upon review of the record before it, held the agreement unenforceable because plaintiff did not give a knowing consent to the agreement to arbitrate.

The facts in the instant case present an even stronger argument in favor of holding the agreement unenforceable than do the facts in *Pepper*. In both cases, plaintiffs stated that they did not recall signing the agreement to arbitrate or having it explained to them. Unlike the clinic in *Pepper*, the clinic in this case did not show that it was the procedure of clinic staff to offer to explain the agreement to patients. The clinic did not explain the purpose of the form to plaintiff and did not show whether plaintiff was required to sign the form or forfeit treatment. In *Pepper*, the fact that both parties were waiving their right to a jury trial was explicit, which is not so in the present case.

Clearly, the issues of knowing consent and reasonable expectations are closely related and intertwined. In *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984), this court used the Restatement (Second) of Contracts § 211 (Standardized Agreements), as a guide to analyzing, among other things, contracts that contain non-negotiated terms. The comment to subsection (3), quoted with approval in *Darner*, states in part:

> Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation.

*See* 140 Ariz. at 391, 682 P.2d at 396.

The Restatement focuses our attention on whether it was beyond plaintiff's rea-

sonable expectations to expect to arbitrate her medical malpractice claims, which includes waiving her right to a jury trial, as part of the filling out of the three forms under the facts and circumstances of this case. Clearly, there was no conspicuous or explicit waiver of the fundamental right to a jury trial or any evidence that such rights were knowingly, voluntarily and intelligently waived. The only evidence presented compels a finding that waiver of such fundamental rights was beyond the reasonable expectations of plaintiff. Moreover, as Professor Henderson writes, "[i]n attempting to effectuate reasonable expectations consistent with a standardized medical contract, a court will find less reason to regard the bargaining process as suspect if there are no terms unreasonably favorable to the stronger party." Henderson, *supra*, at 995. In this case failure to explain to plaintiff that the agreement required all potential disputes, including malpractice disputes, to be heard only by an arbitrator who was a licensed obstetrician/gynecologist requires us to view the "bargaining" process with suspicion. It would be unreasonable to enforce such a critical term against plaintiff when it is not a negotiated term and defendant failed to explain it to her or call her attention to it.

Plaintiff was under a great deal of emotional stress, had only a high school education, was not experienced in commercial matters, and is still not sure "what arbitration is." Given the circumstances under which the agreement was signed and the nature of the terms included therein, our reading of *Pepper*, *Darner*, the Restatement and the affidavits in this case compel us to conclude that the contract fell outside plaintiff's reasonable expectations and is, therefore, unenforceable. Because of this holding, it is unnecessary for us to determine whether the contract is also unconscionable.

## III. A Comment on The Dissent

In view of the concern expressed by the dissent, we restate our firm conviction that arbitration and other methods of alterna-

tive dispute resolution play important and desirable roles in our system of dispute resolution. We encourage their use. When agreements to arbitrate are freely and fairly entered, they will be welcomed and enforced. They will not, however, be exempted from the usual rules of contract law, as A.R.S. § 12–1501 itself makes clear.

We also restate that we decline the invitation to write a sweeping, legislative rule concerning all agreements to arbitrate. Instead, we decide *this* case. In *this* case, the facts concerning the signing of the document have all come from the plaintiff and all are uncontradicted. Under the undisputed facts in *this* case, the document involved is a contract of adhesion. Our enthusiasm for arbitration in general does not permit us to ignore the realities present in *this* case.

The dissent is concerned that our decision today sends a "mixed message." It is, however, our intent to send a clear message. That message is: Contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectations of the parties. This is a well-established principle of contract law; today we merely apply it to the undisputed facts of the case before us.

### DISPOSITION

Those portions of the opinion of the court of appeals inconsistent with this opinion are vacated. The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion. Because plaintiff has successfully overcome defendant's claimed contractual defense, the trial court may entertain an application for fees incurred at the trial court and appellate level. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 391–95, 710 P.2d 1025, 1046–50 (1985).

FELDMAN, C.J., and CORCORAN and ZLAKET, JJ., concur.

MARTONE, Justice, dissenting.

The court's conclusion that the agreement to arbitrate was outside the plaintiff's reasonable expectations is without basis in law or fact. I fear today's decision reflects a preference for litigation over alternative dispute resolution that I had thought was behind us. I would affirm the court of appeals.

We begin with the undisputed facts that the court ignores. Appendix "A" to this dissent is the agreement to arbitrate. At the top it states in bold capital letters "PLEASE READ THIS CONTRACT CAREFULLY AS IT EFFECTS [sic] YOUR LEGAL RIGHTS." Directly under that in all capital letters are the words "AGREEMENT TO ARBITRATE." The recitals indicate that "the Parties deem it to be in their respective best interest to settle any such dispute as expeditiously and economically as possible." The parties agreed that disputes over services provided would be settled by arbitration in accordance with the rules of the American Arbitration Association. They further agreed that the arbitrators appointed by the American Arbitration Association would be licensed medical doctors who specialize in obstetrics/gynecology. Plaintiff, an adult, signed the document.

Under A.R.S. § 12–1501, a written contract to submit to arbitration *any* controversy that might arise between the parties is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." The statute applies to any controversy. Under A.R.S. § 12–1503, if the arbitration agreement provides a method of appointment of arbitrators, "this method shall be followed." Under A.R.S. § 12–1518, the American Arbitration Association is expressly acknowledged as an entity that the state itself may use in connection with arbitration. There is judicial review of any award. A.R.S. § 12–1512. Thus, on the face of it, the contract to arbitrate is plainly reasonable and enforceable unless there are grounds to revoke it. A.R.S. § 12–1501.

The court seizes upon the doctrine of reasonable expectations to revoke this contract. But there is nothing in this record that would warrant a finding that an agreement to arbitrate a malpractice claim was

not within the reasonable expectations of the parties. On this record, the exact opposite is likely to be true. For all we know, both sides in this case might wish to avoid litigation like the plague and seek the more harmonious waters of alternative dispute resolution.[1] Nor is there anything in this record that would suggest that arbitration is bad. Where is the harm? In the end, today's decision reflects a preference in favor of litigation that is not shared by the courts of other states and the courts of the United States.

In *Doyle v. Giuliucci*, 62 Cal.2d 606, 43 Cal.Rptr. 697, 699, 401 P.2d 1, 3 (1965), Chief Justice Roger J. Traynor of the California Supreme Court said, in connection with a medical malpractice claim, that "[t]he arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes." And, in *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 131 Cal.Rptr. 882, 890, 552 P.2d 1178, 1186 (1976), the California Supreme Court outlined "the benefits of the arbitral forum":

> [t]he speed and economy of arbitration, in contrast to the expense and delay of jury trial, could prove helpful to all parties; the simplified procedures and relaxed rules of evidence in arbitration may aid an injured plaintiff in presenting his case. Plaintiffs with less serious injuries, who cannot afford the high litigation expenses of court or jury trial, disproportionate to the amount of their claim, will benefit especially from the simplicity and economy of arbitration; that procedure could facilitate the adjudication of minor malpractice claims which cannot economically be resolved in a judicial forum.[2]

The Federal Arbitration Act, 9 U.S.C. § 2, is just like Arizona's, A.R.S. § 12–1501. There was a time when judicial antipathy towards arbitration prevailed. Poor Justice Frankfurter had to say in dissent in *Wilko v. Swan*, 346 U.S. 427, 439, 74 S.Ct. 182, 189, 98 L.Ed. 168 (1953) that "[t]here is nothing in the record before us, nor in the facts of which we can take judicial notice, to indicate that the arbitral system … would not afford the plaintiff the rights to which he is entitled."

Justice Frankfurter's views have now been vindicated. The Supreme Court of the United States has upheld arbitration agreements under the Federal Arbitration Act in a variety of contexts, from the commercial setting in *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Securities Exchange Act of 1934 and RICO claims) and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933) to employment discrimination claims. *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Age Discrimination in Employment Act claim).

Indeed, in *Gilmer*, the Supreme Court expressly rejected the arguments that regrettably this court has accepted. —— U.S. at —— – ——, 111 S.Ct. at 1654–55. The Supreme Court has expressly rejected the "outmoded presumption" and "suspicion of arbitration as a method of weakening the protections afforded in the substantive law." *Rodriguez de Quijas*, 490 U.S. at 481, 109 S.Ct. at 1920.

Against this background, how does this court reach its conclusion that arbitration

---

1. According to a national survey on American attitudes towards dispute resolution, 82% of the American public, once informed, is willing to use dispute resolution, particularly mediation and arbitration. *NIDR Releases Findings of National Survey on Public Attitudes Towards DR*, Forum, Summer 1992 at 26.

2. Following these decisions, the California legislature adopted Cal.Civ.Proc.Code § 1295, which expressly regulates such provisions. California has acknowledged the validity of contracts in

compliance with the statute even where the patient is illiterate and, as here, claims not to remember signing it. *Bolanos v. Khalatian*, 231 Cal.App.3d 1586, 283 Cal.Rptr. 209, 211 (1991).

Michigan has a statute similar to California's, Mich.Stat.Ann. §§ 27A.5040–27A.5065, and its court has rejected arguments that arbitration agreements in compliance with the statute are adhesive, unconscionable, or deny people their rights to jury trials. *Morris v. Metriyakool*, 418 Mich. 423, 344 N.W.2d 736 (1984).

is beyond the reasonable expectations of the parties? Its reliance on *Obstetrics and Gynecologists v. Pepper,* 101 Nev. 105, 693 P.2d 1259 (1985), *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984), and the *Restatement (Second) of Contracts* § 211 (1979), is misplaced.

*Pepper* is a brief per curiam opinion of the Nevada Supreme Court which merely affirmed the finding of a trial court. The trial court held a hearing to determine whether there was an enforceable arbitration contract. However, the trial court did not make findings of facts and conclusions of law. That court simply denied a motion to stay pending arbitration. The Nevada Supreme Court said "[t]he district court could certainly have found that the arbitration agreement was an adhesion contract." 693 P.2d at 1260. It then said "[s]ince appellant's counsel failed to pursue the entry of findings of facts and conclusions of law, we are bound to presume that the district court found that respondent did not give a knowing consent to the arbitration agreement prepared by appellant clinic." *Id.,* 693 P.2d at 1261. If *Pepper* stands for anything, it stands for the proposition that "knowing consent" is a factual question, and that an appellate court will affirm a factual finding if there is any evidence to support it. The basis for the court's decision was "knowing consent" under Nevada law, not reasonable expectations under ours.

Nor are *Darner* and the *Restatement* support for this court's conclusion. *Darner* held that an adhesive contract term that is "contrary to the negotiated agreement made by the parties," 140 Ariz. at 387, 682 P.2d at 392, will not be enforced because it collides with expectations that "have been induced by the making of a promise." 140 Ariz. at 390, 682 P.2d at 395 (quoting 1 Corbin, *Contracts* § 1 at 2 (1963)). The defendant here did not promise the plaintiff that malpractice claims could be litigated. Thus, the agreement to arbitrate is not contrary to any negotiated deal.

*Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 742 P.2d 277 (1987), of course, extended *Darner* to the entire scope of the *Restatement (Second) of Contracts* § 211 (1979). But even that section does not support today's decision. Under *Restatement (Second) of Contracts* § 211(3), standardized agreements are enforceable except where a party has reason to believe that the other party would not manifest assent if he knew that the writing contained a particular term. Comment f to § 211 tells us:

> Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view.

Plainly, there are no facts in this case to support any of these factors. There were no prior negotiations that were contrary to arbitration. An agreement to arbitrate is hardly bizarre or oppressive. It is a preferred method of alternative dispute resolution that our legislature has expressly acknowledged in A.R.S. § 12–1501. Arbitration does not eviscerate any agreed terms. Nor does it eliminate the dominant purpose of the transaction. The plaintiff here had an opportunity to read the document, the document was legible and was hardly hidden from plaintiff's view. This arbitration agreement was in bold capital letters. Thus, the reasonable expectations standard of the *Restatement (Second) of Contracts* § 211 does not support this court's conclusion.

There is another reason why § 211(3) fails to support the court's conclusion. The *Restatement (Second) of Contracts* chapter 8 describes the whole range of unenforceable contracts. Its introductory note states:

A particularly important change has been effected by statutes relating to arbitration, which have now been enacted in so. many jurisdictions that it seems likely that even in the remaining states, there has been a change in the former judicial attitude of hostility toward agreements to arbitrate future disputes.... Such agreements are now widely used and serve the public interest by saving court time. *The rules stated in this Chapter do not preclude their enforcement even in the absence of legislation.*

*Restatement (Second) of Contracts* ch. 8, intro. note at 4 (emphasis added). It is difficult to reconcile the court's reliance on the *Restatement* in light of this.

The court tells us that there is no explicit waiver of the fundamental right to a jury trial in the arbitration agreement. But under Rule 38(d), Ariz.R.Civ.P., the failure of a party to serve a demand for a jury trial and file it constitutes a waiver by that party of a trial by jury. In contrast to the criminal process, no complicated proceeding is required to waive a trial by jury in a civil case. It is ironic that the majority prefers litigation, in which the plaintiff would lose her right to trial by jury by failing to know about it and demand it under Rule 38, but then somehow assumes that a document which in bold capital letters informs the plaintiff that it affects her legal rights and is denominated in bold capital letters as "agreement to arbitrate" is insufficient warning.

At bottom, all that could explain the court's decision is a preference for litigation over arbitration. The court expresses sympathy for the plaintiff as though arbitration were harmful to her interests. But Arizona public policy has long supported arbitration as good, not evil. Court annexed arbitration of civil actions under A.R.S. § 12–133 is now an entrenched part of our culture. About 90% of these cases end at arbitration and are not appealed.[3] Arizona Supreme Court Commission on the

Courts, *Report of the Commission on the Courts* 36 (1989). Indeed, the Commission on the Courts specifically recommended that medical malpractice cases be subject to alternative dispute resolution procedures. *Id.* at 38. It noted that many lawyers will not take a malpractice case unless the damages exceed $100,000. "A large number of potential plaintiffs, therefore, may never receive the representation and opportunity for compensation they deserve. Both plaintiff and defense attorneys indicate that they would prefer a different form of dispute resolution." *Id.* at 39.

Ironically, this court was instrumental in establishing an alternative dispute resolution fund under which we promote alternative dispute resolution and administer the fund. A.R.S. § 12–135.

And, we recently amended our rules of civil procedure to encourage trial judges to "[c]onsider alternative dispute resolution." Ariz.R.Civ.P. 16(c)(11). The committee comment to this 1991 amendment notes that "Rule 16(c)(11) is intended by the Committee to be a strong suggestion that the court explore the possibility of alternative dispute resolution *including binding* and non-binding *arbitration....*" Rule 16(c)(11), Ariz.R.Civ.P. comment (emphasis added).

Today's decision sends a mixed message. In light of all of these developments, how can it be that an agreement to arbitrate "fell outside plaintiff's reasonable expectations?" The court's answer, Part III, *ante*, at 152, 840 P.2d at 1017, merely confuses the concept of a contract of adhesion with the doctrine of reasonable expectations. The court says it will enforce arbitration agreements "freely and fairly entered," *ante*, at 153, 840 P.2d at 1018, and that "the document involved is a contract of adhesion." *Id.* But the court's own framework of analysis acknowledges that its "conclusion that the contract was one of adhesion is not, of itself, determinative of its enforceability." *Ante*, at 151, 840 P.2d at 1016. It acknowledges that once it is determined that an adhesive contract ex-

---

**3.** In 1987 and 1988, in Maricopa County, there were 290 appeals from 2,945 terminated arbitration cases.

ists, one looks to (1) reasonable expectations and (2) conscionability. *Id.* No one doubts that this was a contract of adhesion. And the court holds that because "the contract fell outside plaintiff's reasonable expectations" it is unenforceable, and therefore it is not necessary "to determine whether the contract is also unconscionable." *Ante*, at 152, 840 P.2d at 1017. Thus the court does not reach conscionability.

The only basis for the court's decision is "reasonable expectations," but words such as "freely and fairly entered," or "contract of adhesion" are irrelevant to that inquiry. If it is not "free" it is a contract of adhesion. If it is "unfair" it is unconscionable. Nowhere *does* the court's "Comment on The Dissent" provide the basis for its legal conclusion that this adhesive agreement to arbitrate fell outside of plaintiff's reasonable expectations. In the end we are left to conclude that people reasonably expect litigation over alternative dispute resolution. For all these reasons, I dissent.

158

## APPENDIX A

PLEASE READ THIS CONTRACT CAREFULLY
AS IT EFFECTS YOUR LEGAL RIGHTS

### AGREEMENT TO ARBITRATE DEC 2 9 1986

THIS AGREEMENT is made and entered into at Phoenix, Arizona this _____ day of _____ , 198___ , by and between Robert H. Tamis, M.D., Abortion Services of Phoenix, referred to hereinafter as Doctor, its agents, servants and employees. and _Melinda Brenner_____ referred to hereinafter as Patient, (Doctor and Patient hereinafter sometimes collectively referred to as Parties ).

### WITNESSETH:

WHEREAS, Doctor will be performing certain services on behalf of Patient; and

WHEREAS, the Parties hereto recognize that a dispute could develop regarding the fees and or services rendered by Doctor; and

WHEREAS, the Parties deem it to be in their respective best interest to settle any such dispute as expeditiously and economically as possible.

NOW, THEREFORE, in accordance with the provisions herein set forth, and other good and valuable consideration the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. In the event any dispute arises between the Parties as a result of the fees and/or services provided by Doctor the Parties hereto mutually agree that any such dispute shall be settled by binding arbitration in the City of Phoenix in accordance with the rules then prevailing of the American Arbitration Association ( AAA ). The Parties further agree that any arbitrators appointed by the AAA shall be licensed medical doctors who specialize In obstetrics/gynecology.

2. This Agreement shall be binding not only upon the parties hereto, but also as appropriate their respective heirs, devisees, personal representatives, guardians or any person deriving any claim through or on behalf of them.

It is understood by the Patient that he or she is not required to use the aforesaid Doctor and that there are numerous other physicians in Phoenix, Arizona who are qualified to provide the same services as aforesaid Doctor.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement the Day and year first above written.

Doctor

By _____
Authorized Agent

_____

Patient

By _____
Patient

_____
Patient's Spouse (if available)

The above parties appeared and signed this document before me on _____ day of _____ 198___ . In witness thereof I set my seal. _____