Jim PITTS, dba Design Solutions,
Plaintiff—Appellant,

v.

CORONADO CUSTOM HOMES, LLC, an Arizona Limited Liability company; Alex Gruden, husband; Gruden, Mrs, Wife; Wissam Kaddoura, husband; Chirine Kaddoura, wife, Defendants—Appellees.

No. 01–16875.
D.C. No. CV–00–00165–WDB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Decided Feb. 3, 2003.

Before B. FLETCHER, ARNOLD* and RAWLINSON, Circuit Judges.

## MEMORANDUM**

Plaintiff–Appellant Jim Pitts, dba Design Solutions, appeals the denial of his claims for breach of contract and two violations of copyright. These claims relate to the allegedly unauthorized use of its architectural designs and portions of its architectural plans by Defendant–Appellee Coronado Custom Homes (Coronado). Design Solutions asserts that it had contracted with Coronado to draft both preliminary designs and final plans for two houses to be built on two adjacent lots, numbered 18 and 19. Design Solutions alleges that Coronado was not entitled to use the preliminary designs that Design Solutions had drafted for Lot 18 in creating final plans for that house without paying it to complete work on the final plans. Design Solutions further asserts that Coronado was not entitled to use descriptive note blocks and depictions of construction details from the final plans for Lot 19 in the final plans for Lot 18, and it asserts additional claims deriving from these actions. We hold that evidence in the record supports the district court's finding that, under the terms of the contract Design Solutions had drafted, Coronado held a limited license to use both types of disputed materials in its final Lot 18 plans. We hold further that evidence supports the district court's findings that Coronado had not authorized Design Solutions to produce the plans for Lot 18 after the designs for both lots and the Lot 19 plans had been delivered. We therefore affirm the district court's judgment on all counts.

We assume that the parties are familiar with the facts of the case. We will not review them here except as necessary to explicate our decision.

■ Although we agree with the result the district court reached, we have some disagreements with its analysis. In its construction of the contract language, the district court errs in characterizing the contract between Design Solutions and Coronado as a contract of adhesion. Under Arizona law,

> [a]n adhesion contract is typically a standardized form offered to consumers of goods and services on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.... [T]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.... [T]he essence of an adhesion contract is that bargaining position and leverage enable one party "to select and control risks assumed under the contract."

*Broemmer v. Abortion Servs.*, 173 Ariz. 148, 840 P.2d 1013, 1015–16 (1992) (classifying as an adhesion contract one that was "prepared by defendant and presented to plaintiff as a condition of treatment ... [where] the terms of service were not negotiable") (citations and internal quotation marks omitted). In this case, there is no indication that Coronado could not have bargained for better or other terms or approached other architects for bids. The Fee Agreement was, as both parties agree, a formalization of a previous oral discussion as to the scope of the parties' relation-

---

* Honorable Richard S. Arnold, Senior Circuit Judge of the Eighth Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ship; such is not typical of contracts of adhesion.

The district court stated that, as an adhesion contract, any ambiguities in the contract between the parties must be construed "most strongly" against Design Solutions as the drafting party. *See Broemmer*, 840 P.2d at 1018 ("Contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectation of the parties.") Because this is not a contract of adhesion, this overstates the intensity with which the contract terms should be construed against Design Solutions; only the common law rule of contract interpretation applies. *See C & L Enters., Inc., v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 423, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001) ("In appropriate cases, we apply 'the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.' ").

■ The interpretation and meaning of contract provisions are questions of law reviewed de novo. *Yu v. Albany Ins. Co.*, 281 F.3d 803, 807 n. 2 (9th Cir.2002). But, the district court did not limit itself to the four corners of the contract here; it made factual findings that are reviewed for clear error. *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir.1997). Relying on the parties' testimony, the district court found that while the contract established a relationship between the parties that *might* include Coronado's paying Design Solutions to complete work on the Lot 18 plans, it did not *obligate* Coronado to do so. We find no clear error in its factual findings, and we hold that even under the lesser common-law standard appropriate for non-adhesion contracts, the district court did not err in holding that the contract did not require

Coronado to employ and pay Design Solutions to draft the final plans for Lot 18.

Having decided that Coronado could purchase the preliminary design for Lot 18 without contracting to have Design Solutions draft the final plans, the district court found an implied license for use of that design to create the final plans. Without the ability to make use of the design it contracted and paid for, the design would have been of no value to Coronado. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990) and the case upon which it relies, *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir.1984), suggest that a contract provision that might render the purchase of preliminary products a useless expenditure should be construed narrowly. Under Design Solutions's interpretation of the contract terms, Coronado's decision to hire someone else to draft the final plans rendered the Lot 18 designs they had purchased worthless to them. A contract provision that is intended to have such an effect must make that intention explicit. Reviewing the provision de novo, we find it insufficiently so.

■ Design Solutions' allegation that Coronado authorized it to continue work on the project unless it was notified otherwise that Coronado wished to terminate the agreement is a contract claim, not copyright. The parties presented contradictory evidence as to whether Design Solutions actually conveyed such a request, whether Coronado explicitly conveyed its disinclination to have Design Solutions perform such work, and whether the parties' course of dealings or industry practice should have allowed Design Solutions to infer such authorization without having received the "redline" drawings back from Coronado. We do not find that the district court's findings on these factual matters are clear error.

As for the use in the Lot 18 plans of the descriptive note blocks and depictions of construction detail from the Lot 19 plans, we need not reach the question of whether such materials are too generic to be copyrighted, because we agree with the district court that Coronado had an implied license for this use. The three-part test for an implied nonexclusive license is taken from *Effects Assocs.*, 908 F.2d at 558–59. If (1) Coronado requested that Design Solutions produce the Lot 19 plans, (2) Design Solutions created those plans and delivered them to Coronado, and (3) Design Solutions intended that Coronado copy and distribute these plans, an implied license will be held to have been granted.

The first two elements of this test are clearly met. Regarding the last element, the issue before the court was limited to whether the design for Lot 18 and the plans for Lot 19 could be used to produce plans for Lot 18. It is a fair inference that Design Solutions intended the note blocks and construction details and the Lot 18 design be used to produce the Lot 18 plans—albeit by Design Solutions. The district court found that the contract did not express an intention to condition this license on Design Solutions being the one hired to create those plans. These findings are not clear error. On these facts, absent an explicit contractual provision to the contrary, Coronado was justified in using those materials for that purpose.

In light of the above analysis, we need not reach any of the derivative claims dealing with contributory infringement, damages, or costs and attorneys fees. Although Design Solutions may reasonably have believed that it had a contract to draft the final plans for Lot 18, its interpretation of the contract is not the only possible one. If a party drafting contract language fails to eliminate ambiguity in the contract terms, it does so at its peril. Based on the foregoing analysis, the judgment of the district court is

AFFIRMED.