Kenneth A. BATORY, Plaintiff–
Appellant/Cross–Appellee,

v.

SEARS, ROEBUCK AND CO.,
Defendant–Appellee/Cross–
Appellant.

Nos. 03–15661, 03–15781.
D.C. No. CV–02–2026–EHC.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 7, 2004.*

Decided Feb. 25, 2005.

Fed. R.App. P. 34(a)(2).

Lynn M. Laney, Jr., Phoenix, AZ, for Plaintiff–Appellant/Cross–Appellee.

J. Mark Ogden, and Robert Shawn Oller, Phoenix, AZ, for Defendant–Appellee/Cross–Appellant.

Before HALL, BRUNETTI, and GRABER, Circuit Judges.

## MEMORANDUM**

Batory, a former Sears employee, appeals the district court's ruling that an arbitration agreement he entered with Sears is valid and enforceable. Sears cross-appeals the district court's ruling that Batory has not waived his right to arbitration under that agreement.

### A. Enforceability of the Arbitration Agreement

On appeal, Batory asserts that the Pre–Dispute Agreement ("Agreement") is unenforceable on any of four grounds: (i) as an adhesion contract; (ii) as lacking in mutuality; (iii) as unsigned by Sears; and (iv) as an illusory contract. The enforceability of the Agreement is governed by the Federal Arbitration Act ("FAA"), which provides that it "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2004). Applying Arizona contract law, we take each challenge in turn, and find merit in only the first. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir.2002).

### 1. Adhesion contract

■ Batory first argues that the Agreement is invalid "because it was a 'boiler plate' adhesion contract that lacked the contract formation requirement of knowing

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

assent." (Emphasis omitted.) Specifically, he claims that he "signed it in response to a directive from a superior" without "an opportunity to read or understand" it. The district court rejected this claim because Batory "has not disputed he had . . . discretion to decline signing the Pre–Dispute Agreement." The district court did not indicate the legal standard it used to decide this issue. We find the proper standard in *Broemmer v. Abortion Servs. of Phoenix, Ltd.,* 173 Ariz. 148, 840 P.2d 1013 (1992).

The district court based its conclusion on Sears' declaration that "of the 280 employees who were offered enrollment in the DRP, only 139 chose to enroll," noting that Batory "has not disputed he had the same discretion." The parties' briefs focus heavily on the question of whether Batory did or did not, under the circumstances, have discretion to sign the Agreement. In our view, although there is weighty objective evidence that enrollment in Sears' Dispute Resolution Program ("DRP") was voluntary, viewing the evidence in the light most favorable to Batory, this issue remains in genuine dispute—at least as regards the 20 employees present at the February 13, 2002, meeting. At the summary judgment stage, we must credit Batory's uncontradicted declarations that these employees were given only a brief explanation of the DRP, were not given an opportunity to read the DRP booklet before signing the Agreement, and were not "offer[ed] . . . a choice" as to whether or not they could decline enrollment. We emphasize, however, that resolving this question—which bears most directly on an analysis of procedural unconscionability—does *not* answer the question of whether or not the contract was adhesive.

■ *Broemmer* makes clear that the key characteristics of an adhesion contract are that it is offered on a "take it or leave it" basis with no "realistic choice as to its terms." *Broemmer,* 840 P.2d at 1015–16 (internal quotation marks omitted). Here, Batory was presented with a standardized form contract, which (according to Sears) he was free to accept or decline, but the terms of which were not up for negotiation. Batory could not enroll in the DRP "except by acquiescing in the form contract." *Id.* at 1015 (internal quotation marks omitted). That Batory may have had a "realistic choice" to reject the contract (and thus decline enrollment in the DRP) does not mean that Batory had a "realistic choice" as to the terms of that contract. Thus, under Arizona law, the Pre–Dispute Agreement was an adhesion contract, and the district court erred in finding otherwise.

However, for an adhesion contract to be rendered unenforceable, more is required: In this case, the Agreement or DRP must also either contain terms that are contrary to Batory's "reasonable expectations" or be "unconscionable." *Id.* at 1016. Although these issues were not addressed below or on appeal, Arizona law provides that unconscionability is a question of law that can be raised *sua sponte;* thus, they are not waived. *Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 907 P.2d 51, 56 n. 2 (1995). Because we observe evidence that the Agreement and DRP may be unconscionable under Arizona law, we remand for an evidentiary hearing on unconscionability pursuant to Arizona Revised Statutes § 47–2302. *Id.* at 62.

We note that while the Arizona courts have addressed unconscionability in several contexts, they have not specifically addressed the circumstances under which an arbitration agreement is unconscionable. It is clear under Arizona law, however, that substantive unconscionability, whether alone or in combination with procedural unconscionability, is sufficient to render a

contract unconscionable and, thus, unenforceable. *Id.* at 59; *see also Al–Safin v. Circuit City Stores, Inc.,* 394 F.3d 1254, 1259 (9th Cir.2005) (applying a similar analysis under Washington law).

Where a federal court sits in diversity, its task is " 'to predict how the state high court would resolve' " an issue by "look[ing] to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 939 (9th Cir.2001). On remand, then, the district court shall consider whether the Agreement or DRP are unconscionable because: (1) there exists an "overall imbalance in the obligations and rights imposed by the bargain" in that, although Sears is obligated to arbitrate all "Covered Claims," these Covered Claims consist only of "claims against the Company" to the exclusion of claims that Sears may initiate against its employees, *Maxwell,* 907 P.2d at 58; *see also Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); (2) although Sears "reserves the right to modify or terminate [the] DRP upon sixty (60) days notice," it affords no equivalent power to its employees, *see Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1179 (9th Cir.2003), *cert. denied,* 540 U.S. 1160, 124 S.Ct. 1169, 157 L.Ed.2d 1204 (2004); and (3) the fee provision, which requires employees to pay the lesser of $150 or the filing fee if the claim had been filed in court, does not provide for waiver in cases of indigence, *see id.* at 1177.

### 2. Lacking in mutuality

■ Batory next argues that the DRP is invalid because it lacks mutuality, in that it applies only to employees' claims against Sears, and not to Sears' claims against its employees. To the extent that this argument asserts that such an asymmetry is unconscionably one-sided, it is addressed above. To the extent that Batory here argues that the DRP is unenforceable under Arizona law as lacking in mutuality, his argument is incorrect. Under Arizona law, "mutuality is absent when only one of the contracting parties is bound to perform." *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923, 926 (1986). Here, Batory concedes that the DRP requires both parties to arbitrate Covered Claims. Though Covered Claims is defined asymmetrically, "it is not necessary in order to render a particular promise by one party binding on the other party that there be a special promise on the part of the other party directed to that particular obligation." *Id.; accord Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1108 (9th Cir.2002) (employer's "promise to be bound by the arbitration process itself" is adequate consideration).

### 3. Unsigned by Sears

■ Batory next argues that because Sears never signed the Agreement or DRP booklet, it cannot seek to enforce it. However, because the Ninth Circuit clearly has recognized that "[w]hile the FAA 'requires a writing, it does not require that the writing be signed by the parties,' " this argument also fails. *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1439 (1994).

### 4. Unenforceable as illusory

■ Batory lastly argues that because Sears retains the right to modify or cancel the DRP at any time, but does not provide an equivalent right to employees, the arbitration agreement is both an illusory contract and lacking in mutuality. These claims are identical in substance, as both charge that because Sears retains an unfettered right to cancel the agreement, it has provided no consideration and thus is not truly bound. However, as the district

court noted, Sears' discretion to modify the DRP is limited in two important respects: It must provide employees 60 days' notice of termination or any modification, and it cannot modify the DRP with respect to a previously submitted claim. These promises, though small, are adequate consideration to support the agreement. *See Najd,* 294 F.3d at 1108.

### B.  Waiver of Arbitral Remedy

■ On cross-appeal, Sears argues that the district court erred in referring Batory's claim to arbitration, since Batory repudiated his contractual right to arbitrate by filing suit. On appeal, the parties disagree on the applicable law governing waiver or repudiation of an arbitral remedy. The DRP itself, however, provides that the FAA shall govern: "The DRP incorporates an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. Sections 1–14, or if that Act is held to be inapplicable for any reason, the arbitration law in the state in which the arbitration hearing is held." Moreover, even absent such a provision, the Ninth Circuit has concluded that the FAA controls questions of waiver of the right to compel arbitration. *Sovak v. Chugai Pharm. Co.,* 280 F.3d 1266, 1269 (9th Cir.), *amended by* 289 F.3d 615 (9th Cir.2002). Thus, the FAA governs here.

■ To establish waiver, Sears must show that: (1) Batory had knowledge of his existing right to compel arbitration; (2) Batory acted inconsistently with that existing right; and (3) it suffered prejudice from Batory's delay in moving to compel arbitration. *Id.* at 1270. Sears has not shown that it has been prejudiced by Batory's delay in enforcing his arbitral remedy. In fact, Sears "has made no attempt on appeal to articulate how [it] was prejudiced" by any delay. *Id.; see also United*

*Computer Sys., Inc. v. AT & T Corp.,* 298 F.3d 756, 765 (9th Cir.2002) (substantial litigation costs, including costs on appeal, insufficient to establish prejudice where proceedings never went past the pleading stage). Because Sears has failed to meet its burden, Batory has not waived his right to compel arbitration under the FAA.

Therefore, on the appeal, we REVERSE the district court's finding that the Agreement and DRP do not constitute an adhesion contract, and REMAND for an evidentiary hearing on unconscionability pursuant to Arizona Revised Statutes § 47–2302. On the cross-appeal, we AFFIRM the district court's determination that Batory has not waived his arbitral remedy.

**AFFIRMED in part; REVERSED and REMANDED in part.**