869 P.2d 505

Ray Nielson AVERETT; Angela Marie Averett, an adult incapacitated, and Daniel Ray Averett, a minor, by and through their legal guardian and conservator, Eugene W. Averett, Plaintiffs/Appellants,

v.

FARMERS INSURANCE COMPANY OF ARIZONA; Truck Insurance Exchange Co., Defendants/Appellees.

No. CV–92–0015–PR.

Supreme Court of Arizona.

March 3, 1994.

Poore & Riddle by J. Thomas Poore, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendants/appellees.

## OPINION

ZLAKET, Justice.

We accepted review of this case to examine the relationship between an insured's "reasonable expectations" of coverage and the "household exclusion" found in an automobile liability insurance policy. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## BACKGROUND

Angela and Daniel Averett were seriously injured while riding as passengers in the family automobile driven by their mother, Carol Averett. Carol died as a result of the accident, which the parties have stipulated was caused by her negligence.

Ray Averett, Carol's husband, made a claim for himself and his children against Farmers Insurance Company, which carried liability insurance on the automobile Carol was driving. Farmers, relying on its "household exclusion" and *Arceneaux v. State Farm Mut. Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976), responded with an offer of $15,000 per child, even though the policy declarations recited bodily injury limits of $250,000 per person and $500,000 per occurrence, and the children's injuries admittedly exceeded those amounts.

In its insuring agreement, the Averett policy states that Farmers

> will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person ... arising out of the ... use of a **private passenger car.**

Although Ray Averett was designated as the named insured, it is undisputed that his wife also qualified as an "insured person" under the policy.

In a separate section entitled "Exclusions," the policy states:

This coverage does not apply to:

. . . . .

11. The liability of any **insured person** for **bodily injury** to you or a **family member.**

"Family member" is defined to include related persons who live in the named insured's household. Because Angela and Daniel were clearly family members under this definition, Farmers denied coverage for all sums over the statutorily required limits of $15,000 per person and $30,000 per occurrence. *See* A.R.S. § 28–1170.

Averett filed suit, seeking a judicial declaration that Farmers was obligated to pay the full amount of the policy limits notwithstanding the exclusion. The parties filed cross-motions for summary judgment. In denying Averett's motion and granting Farmers', the trial court cited *Arceneaux* for the proposition that "the household exclusion in the plaintiff's insurance policy is a valid exclusion after payment of the statutory limits." Although his order did not expressly say so, the judge obviously rejected the argument that Averett's reasonable expectations could render the exclusion unenforceable. The court of appeals affirmed by memorandum decision, with one judge dissenting.

## DISCUSSION

▪▪ It is well established that a contracting party's reasonable expectations may affect the enforceability of non-negotiated terms in a standardized agreement. *See Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 151–52, 840 P.2d 1013, 1016–17 (1992); *Darner Motor Sales v. Uni-*

*versal Underwriters,* 140 Ariz. 383, 389–94, 682 P.2d 388, 394–99 (1984); Restatement (Second) of Contracts § 211 cmt. f (1981). Farmers argues, however, that because there is no evidence here that its agent made misleading statements or promises to induce Mr. Averett to purchase this policy, the law of reasonable expectations does not apply. We disagree. The absence of misrepresentation is not determinative. In *State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 151, 717 P.2d 449, 455 (1986), we said:

> It is true that an oral representation contrary to the words in the written instrument may qualify as either a fraudulent or negligent misrepresentation, but *Darner* does not by its terms limit itself to misrepresentation actions. We decline the invitation to so limit the decision. The provision in the declaration page reflecting non-owned coverage in the amount of $300,000 certainly is an indication that the "dickered" or negotiated deal was the purchase of $300,000 in non-owned coverage. One of the basic principles which underlies *Darner* is simply that the language in the portion of the instrument that the customer is not ordinarily expected to read or understand ought not to be allowed to contradict the bargain made by the parties.

▮▮ Farmers further suggests that our decision in *Arceneaux* validates its conduct here. Such an assertion misconstrues that case. With respect to coverages in excess of the statutorily required minimums, A.R.S. § 28–1170(G) and *Arceneaux* permit the adoption of contract terms that do not conform to the strict requirements of the financial responsibility laws. 113 Ariz. at 218, 550 P.2d at 89. This allowance does not necessarily mean, however, that all such terms are automatically valid and enforceable. *See Do by Minker v. Farmers Ins. Co. of Arizona,* 171 Ariz. 113, 116, 828 P.2d 1254, 1257 (Ct. App.1991). As with any agreement sought to be judicially enforced, the law of contracts must be applied in an attempt to discern and effectuate the parties' intentions. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 854 P.2d 1134 (1993). That body of law includes the rule of reasonable expectations. Thus, while the "household exclusion" may

be enforceable in some circumstances, it may not be in others. In *Gordinier v. Aetna Cas. & Sur. Co.,* 154 Ariz. 266, 272–73, 742 P.2d 277, 283–84 (1987), we stated:

> As a synthesis of the cases and authorities demonstrates, Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations:
>
> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured [citing *State Farm Mutual Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986) and *Wainscott v. Ossenkop,* 633 P.2d 237 (Alaska 1981) ];
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage [citing *Zuckerman v. Transamerica Insurance Co.,* 133 Ariz. 139, 650 P.2d 441 (1982) ];
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured [citing *Sparks v. Republic National Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982) ];
>
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy [citing *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 682 P.2d 388 (1984) ]....

▮▮ According to his deposition testimony, Ray Averett told the Farmers agent that he wanted "full coverage" for his entire family, although the meaning of that statement is not fully explained in the record. Averett purchased what he believed was "full coverage," in amounts far greater than those required by law. He chose Farmers because he thought it offered what he wanted at the

lowest available price, and he paid all of the premiums.

Averett further testified that he thought this insurance would cover his children if they were injured while riding with their mother. He said that his wife had health problems, which made him particularly concerned about her ability to drive. His testimony implies that had he been advised of the household exclusion, he might have opted to shop elsewhere, or taken other measures. The Farmers agent allegedly knew of Carol's health problems, but it is unclear to what extent they were discussed, if at all, in connection with Averett's purchase of the coverage.

Rather typically, the parties did not discuss the contract terms, nor was there any opportunity to negotiate them. Moreover, Averett testified that he never received a copy of the actual insurance policy, though Farmers asserted during argument before this court that it sent one to him. Averett acknowledged receipt of the declarations page which recited coverage in the limits he had purchased. This allegedly reinforced his belief in the amount of protection he thought he had. Averett further stated that at no time prior to this claim was he advised of the existence or substance of the "household exclusion." When the exclusion was finally called to his attention, he said that he read but was unable to understand it.

In *Bogart*, we stated:

[W]e believe it quite clear that the clause in question also significantly modifies the "dickered deal" and could even be found unconscionable. The "dickered deal" was to buy $100,000/$300,000 in owned and non-owned auto coverage. Most informed policyholders would be shocked to discover that the substantial protection which they had purchased was reduced to the $15,000 minimum statutory coverage whenever they drove a rented car. Such an eventuality is certainly one that should be clearly called to the attention of the insured.

149 Ariz. at 153, 717 P.2d at 457. The same analysis lends itself to this case. According to Averett's testimony, neither the agent nor anyone else from Farmers ever explained the coverage or told him that the policy might provide fewer benefits for his children than it would for a stranger.

We believe that reasonable persons could differ on the factual issues presented here. Whether the average, reasonably informed policyholder would expect his or her family to be excluded from liability coverage under these circumstances is certainly a debatable question. We strongly suspect that most consumers who purchase insurance in amounts greater than the statutory minimums would be surprised to learn that members of their household were covered only to the extent of $15,000 per person and $30,000 per occurrence, regardless of the limits stated on the face of the policy. Other questions here include whether Farmers ever provided Averett with a copy of the policy that it now attempts to enforce, and if so, whether that document's language was sufficiently clear to place a reasonable insured on notice of the household exclusion. Thus, we are of the view that the trial court should have permitted a fact finder to decide if, based on all available evidence, the household exclusion in Averett's policy was "beyond the range of reasonable expectations." Restatement (Second) of Contracts § 211 cmt. f (1981).

■ Our decision should not be read to mean that a household exclusion is unenforceable under all circumstances. As *Arceneaux* makes clear, the insurance company and its insured may agree to this exclusion with respect to losses above the statutorily required minimum amounts of coverage. But such a limitation must be *intended and agreed to*, not merely imposed upon an unwitting customer. When an exclusion, limitation or escape clause runs contrary to what a reasonable insured would expect, or when it significantly diminishes coverage that the policy purports on its face to provide, the surrounding facts and circumstances must be considered to determine whether, and to what extent, there was a meeting of the minds between the contracting parties.

Nor is it our intention here to extend or expand upon the doctrine of reasonable expectations as previously described in cases such as *Darner, Broemmer* and *Gordinier*. We hold only that under these facts, the trial

court should not have granted summary judgment on Averett's reasonable expectations theory but should have instead allowed the matter to be considered by the finder of fact.

### CONCLUSION

We vacate the court of appeals' memorandum decision. We reverse the summary judgment in favor of Farmers, and remand the case for further proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, Vice C.J., and CORCORAN and MARTONE, JJ., concur.