REASONOVER But I didn't know they's taping me though.

JOLLIFF I didn't either, till they said something about, something about Dellwood something and I knew you had said something about the tape or something in Dellwood. I didn't know they was taping conversation in the jail cell either.

REASONOVER They had an intercom ———————

JOLLIFF Aw, is that what that was?

REASONOVER Yeah, they had intercoms ———————

JOLLIFF Uh huh, but they must thing people crazy ———————, they must thing you continuously talk about it to them by the intercom.

REASONOVER ——————— I ain't did it. ——————— 4 days.

JOLLIFF Did they?

REASONOVER Hell, yeah, cause ———————.

JOLLIFF I know you said, I know you said you was going home that day ———————.

REASONOVER ———————

JOLLIFF They ain't got no evidence, they ain't got no evidence that you did, that you can ———————.

REASONOVER I know, but you know what, they could get some motherfucking evidence but it ain't going to point to this motherfucking way, cause I ain't did shit! Ya know? And uh, I talked to my lawyer and my lawyer said they told him when they first locked me up. I wasn't under arrest.

JOLLIFF That you weren't under arrest?

REASONOVER Right when they first came got me to my house just had me for questioning. That's why they held me more than 20 hours.

JOLLIFF Ummmm.

REASONOVER And then I wasn't under arrest till they booked me, ——————— and that's another way they get you in shit.

JOLLIFF Well, please get in touch with me.

REASONOVER ——————— I'll come through there and holler at you. Hold on, Yeah, well, you stay over at those apartments ——————— Lucas and Hunt Apartments?

JOLLIFF Yeah, I'm down on ——————— down on Evans (?) ———————. I'm staying clear from him cause ———————.

REASONOVER ——————— sitting across the street ———————.

JOLLIFF Ok. You got a pencil? 621-2476.

REASONOVER 621-2476. Ok then. Thanks for calling.

JOLLIFF Ok, take care.

REASONOVER I'll call you, hear?

JOLLIFF Ok, bye.

REASONOVER All right, bye.

**James CRETENS and Bonita Cretens, individually and as the next friends of Amber Nicole Cretens, Plaintiff,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, a foreign corporation, Defendant.**

**No. Civ. 97-440-TUC-WFN (JCC).**

United States District Court, D. Arizona.

March 1, 1999.

Order Granting Summary Judgment Aug. 6, 1999.

## ORDER and MEMORANDUM OPINION GRANTING PARTIAL SUMMARY JUDGMENT

WM. FREMMING NEILSEN, Chief Judge.

### I.

### Introduction

Pursuant to 28 U.S.C. § 636, Fed. R.Civ.P. 62(b) and the Rules of Practice of the District, this matter was referred to United States Magistrate James Carruth for Report and Recommendation ("Report"). Defendant State Farm moved for partial summary judgment on Plaintiffs' breach of contract claim based on the intentional act and household exclusion clauses. On November 20, 1998, Magistrate Judge Carruth filed a Report and Recommendation and copies were mailed to all parties. The Report found questions of fact exist as to whether the insured had the capacity to form intent for purposes of the intentional act exclusion. The Report also found that there was a question of fact as to whether the household exclusion was enforceable. Consequently, Magistrate Judge Carruth recommends that State Farm's motion be denied.

State Farm filed an objection to the Report to which Plaintiffs filed a response. State Farm filed a reply brief. The Court then allowed Plaintiffs to file a supplemental brief. On February 17, 1999, this Court held a telephonic conference. Having reviewed the file, heard from counsel, and been fully advised in this matter, the Court declines to adopt the conclusions of the magistrate judge's Report and Recommendation. The Report includes the factual bases underlying this case and provides a comprehensive discussion of Arizona's insurance law in the area of intentional act clauses. Thus,

while this Court has conducted a *de novo* review of the record, it will only repeat those facts or law relevant to the present discussion.

### II.

### Intentional Act Exclusion

When Jeffrey Poer purchased homeowner's insurance from State Farm, the policy included an intentional act exclusion. This exclusion precludes coverage for damages which are "expected or intended" by an insured. *See* Defendant's Separate Statement of Facts in Support of Motion For Partial Summary Judgment ("DSOF"), Ex. 1 at 15. State Farm argues that this intentional act exclusion coupled with A.R.S. § 13–807, bars Plaintiffs' breach of contract claims.

With A.R.S. § 13–807, the Arizona legislature has statutorily provided that an insured may not deny an essential allegation of a criminal offense in a subsequent civil trial.[1] The insured, Jeffrey Poer, killed his wife and was later convicted by a jury of voluntary manslaughter during "sudden quarrel or heat of passion." At trial, Poer raised an insanity defense which the jury rejected when it found him guilty of manslaughter.

The magistrate judge found that because a rational jury could differ as to whether Poer had the mental capacity to form intent at the time he killed his wife, summary judgment was not appropriate. This Court disagrees. While the discussion is excellent on general principles of insurance law with respect to intent, the cases relied upon by the magistrate judge did not involve an insured convicted of an intent crime. Significantly, the Report contained no meaningful analysis of the two cases, *K.B. v. State Farm Fire and Casualty*, 189 Ariz. 263, 941 P.2d 1288 (Ariz.Ct.App.1997) and *Western Agricultural Ins. v. Brown*, 1998 WL 778014

---

1. A.R.S. 13–807 states in relevant part:
 A defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense of which he was adjudged guilty. . . .

(Ariz.Ct.App.1998) which did involve convictions of intent crimes and the impact of section 13–807 to a later civil suit.

In the case relied upon by Plaintiffs and the magistrate judge, *Republic v. Feidler,* 178 Ariz. 528, 875 P.2d 187 (App.1993), the Defendant, while under the influence of alcohol and drugs, stabbed the victim in the back several times causing severe injuries. The defendant pled no contest to aggravated assault and the victim brought suit against the defendant's homeowner's policy. Aggravated assault requires a mental state of "intentionally, knowingly, or recklessly" causing "serious injury." A.R.S. §§ 13–1203(A)(1) and 13–1204(A)(1). As defined in A.R.S. § 13–105(6)(a)(b) and (c), recklessness is the minimum mental state for aggravated assault. *Feidler,* 178 Ariz. at 533, 875 P.2d at 192. Since that case concerned a "no contest plea," the minimum mental state necessary for the insured/defendant in *Feidler* was that he acted recklessly. *Id.* Since recklessness did not rise to the level of intentional conduct for purposes of the intentional act exclusion, *Feidler* held that A.R.S. § 13–807 did not bar the parties from litigating whether the insured "lacked the mental capacity to intend injury for insurance coverage purposes." *Id.*

*Feidler* is factually distinguishable from *K.B. v. State Farm, supra.* In *K.B.,* John, the perpetrator, pled guilty to attempted child molestation. When the victim brought suit for coverage under the homeowner's policy, the intentional act exclusion was found to apply based on John's guilty plea since it involved an element of intent. *K.B.,* 189 Ariz. at 267, 941 P.2d at 1292 ("by pleading guilty to attempted child molestation, John has admitted he acted with the intent to molest"). *K.B.* held that under section 13–807, the plaintiff was estopped from using John's intoxication to deny that he acted intentionally. *Id.* Therefore, *K.B.* held that coverage was precluded under the intentional acts exclusion. *Id.*

*Western Agricultural Ins. v. Brown, supra,* reached a similar result. In *Western Agricultural,* the defendant asserted he was insane when he shot and killed his wife and her companion. The jury rejected the insanity defense and convicted the defendant of first degree murder. In the subsequent civil suit brought by the victims' survivors, the insurance company asserted that based on the defendant's conviction, the plaintiffs were barred as a matter of law by the intentional acts exclusion. The *Western Agricultural* court agreed and held that where the insured has been convicted of premeditated first degree murder, § 13–807 collaterally estops the insured from asserting mental derangement to avoid the intentional acts exclusion. *Western Agricultural,* 1998 WL at * 3.

Since Poer had not been convicted of first degree murder with respect to his wife's killing, the magistrate judge apparently found *Western Agricultural* not helpful in determining whether Poer "expected or intended" the act for insurance purposes. *See* Report at 17 n. 9. *K.B.* and *Western Agricultural,* however, are the only two published cases which analyze the applicability of an intent crime conviction to a subsequent civil lawsuit for homeowner's insurance coverage. Thus, this Court concludes that *K.B.* and *Western Agricultural* cannot be so easily discounted. As in *K.B.* and *Western Agricultural,* the threshold inquiry must begin with Poer's criminal trial and whether the jury found that he intentionally or knowingly killed his wife. If the answer to that question is yes, then A.R.S. § 13–807 precludes the Plaintiffs from relitigating whether Poer had the capacity to commit an act which was either expected or intended. For the answer, the Court turns to the record of the state criminal proceedings.

Poer was charged with first degree murder of both Kim Poer and her friend, Susan Moore. DSOF, Ex. 3. The case went to trial and during the final instructions the jury was instructed on first degree murder, second degree murder, and

manslaughter. *Id.*, Ex. 4 at 19–24. With respect to manslaughter, the jury was instructed:

> The crime of manslaughter requires proof of the following three things:
>
> 1) The defendant *intentionally* killed another person; or the defendant caused the death of another person by conduct which he *knew* would cause death or serious physical injury; *and*
>
> 2) The defendant acted upon a sudden quarrel or heat of passion; and
>
> 3) The sudden quarrel or heat of passion resulted from adequate provocation by the person who was killed.

*Id.* at 21:25–22:10 (emphasis added). The state trial court defined " adequate provocation" to mean:

> conduct or circumstances sufficient to deprive a reasonable person of self control. There must not have been a "cooling off" period between the provocation and the killing.

*Id.* at 22:11–15. The jury was further instructed that:

> If you find the defendant guilty of the crime of manslaughter, you must determine whether or not the offense was a dangerous offense.

*Id.* at 22:23–25. The jury was given the following definition of dangerous offense:

> An offense is a dangerous offense if it involved the *intentional* or *knowing* infliction of a serious physical injury or the use or exhibition of a deadly weapon or dangerous instrument.

*Id.* at 23:1–4 (emphasis added). The state trial court then defined "intentionally" for the jury:

> "Intentionally" as used in these instructions means that a defendant's objective is *to cause that result or to engage in that conduct.*

*Id.* at 23:5–8. The jury was also instructed:

> The existence of intent is one of the questions of fact for your determinations.

*Id.* at 23:11–12. The state trial court then defined "knowingly" for the jury:

> "Knowingly" means that a defendant *acted with awareness* of or *belief in the existence of conduct* or circumstances constituting an offense. It does not mean a defendant must have known the conduct was forbidden by law.

*Id.* at 13–17 (emphasis added). The state trial court also instructed the jury that in order to convict Poer of manslaughter,

> The State must prove that the defendant did a *voluntary act* forbidden by law.
>
> "Voluntary act" means a bodily movement *performed consciously* and as a result of effort and determination.

*Id.* at 23:21–25.

At trial, Poer argued that he was not responsible for his criminal conduct by reason of insanity. With respect to that defense, the state trial court instructed:

> A defendant is not responsible for criminal conduct by reason of insanity if at the time of such conduct the defendant was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if the defendant did know, the defendant nonetheless did not know the conduct was wrong.

*Id.* at 24:6–11.

The jury rejected Poer's insanity defense and convicted him of voluntary manslaughter for the killing of Kim Poer in violation of A.R.S. §§ 13–1103(A)(2), 13–1101, 13–604(G), 13–701, and 13–801. *Id.*, Ex. 5. On May 24, 1994 during the sentencing phase of the trial, the state court found Jeffrey Poer "committed manslaughter by intentionally causing the death of Kim Noelle Poer" and sentenced him to fifteen years of imprisonment. *Id.* There is no evidence in the record that Poer appealed his conviction. Thus, Poer's conviction for manslaughter represents a final judgment.

Plaintiffs assert that questions of fact exist as to Poer's subjective intent and that this Court cannot find as a matter of law that the intentional act exclusion ap-

plies. Plaintiffs rely on the *Globe/Lyons* test which holds "that if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition [acted] on an irrational impulse ... his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract." *Globe American Casualty Co. v. Lyons,* 131 Ariz. 337, 340, 641 P.2d 251, 254 (App. 1981). Plaintiffs argue that the trial court's finding that the insured acted intentionally in *Globe/Lyons,* is analogous to the criminal jury's finding that Poer acted "knowingly" when he killed Mrs. Poer.

▆▆▆▆ In contrast to Plaintiffs' contention, Arizona has rejected the argument that a conviction for "knowingly" committing an act means the insured can still deny he acted intentionally for purposes of avoiding an intentional acts exclusion. *Western Agricultural Insurance.,* 1998 WL 778014 at * 3–4. Indeed, *Western Agricultural's* conclusion is consistent with the "knowingly" instruction given in Poer's criminal trial. That is, that Poer "acted with awareness of or belief in" his conduct DSOF, Ex. 3 at 13–17. Therefore, it does not matter whether Poer acted "knowingly" or "intentionally" for purposes of applying the intentional acts exclusion.

In order to find Poer guilty of voluntary manslaughter, the jury had to conclude that Poer "intentionally killed another or ... caused the death of another ... by conduct which he knew would cause death or physical injury" and that that act was "performed consciously." Thus, there is a conclusive finding *by a jury,* that Poer acted intentionally or knowingly when he killed Kim Poer. Poer, or as in this case his assignees standing in his shoes, are precluded under A.R.S. § 13–807 from re-litigating whether Poer had the capacity to expect or intend physical injury to Mrs. Poer. State Farm is entitled to a finding as a matter of law that Plaintiffs' breach of contract claims are barred by the intentional act exclusion.

Without cite to authority, Plaintiffs attempt to argue that the "heat of passion" element negates the intentional element of Poer's crime. This argument is without merit based on the instructions given to the criminal jury. The Court also finds State Farm's counter-argument persuasive. State Farm relies on *Figueroa v. Hartford Ins. Co.,* 241 N.J.Super. 578, 575 A.2d 888 (N.J.Super.A.D.1990) to argue that a killing in the "heat of passion" does not mean the insured can re-litigate his intent to commit the act for purposes of insurance coverage. *Figueroa* considered this very issue.

In *Figueroa,* the court held that manslaughter committed in the heat of passion is still an intentional or knowing crime for purposes of an intentional act exclusion. *Id.* 575 A.2d at 894. In reaching its decision, it first distinguished *Ruvolo v. American Cas. Co.,* 39 N.J. 490, 189 A.2d 204 (N.J.1963). *Figueroa* recognized that *Ruvolo:*

held that coverage should not be limited to those cases where the insured is legally insane but should be extended to those instances where the actor was so deranged that he could not act rationally stating,

'while such mental incapacity as would excuse an act from criminal responsibility would preserve the insured's protection under this policy, it is our opinion coverage should not be limited to cases which satisfy that definition. We hold that if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and killed [the victim], his act cannot be treated as "intentional" within the connotation of the defendant's insurance contract.'

*Figueroa,* 241 N.J.Super. at 588, 575 A.2d at 894. Notwithstanding, *Figueroa* rejected the plaintiff's contention that *Ruvolo* held that voluntary manslaughter was included within the scope of unintentional

acts. Instead, *Figueroa* found that the defendant's:

> conviction for voluntary manslaughter established that at the time of the decedent's death, [the insured] was not insane or suffering from a mental derangement of the nature and kind identified in *Ruvolo* as unintentional. His conviction for manslaughter in violation of J.J.S.A.2C:11–4b(2) established that [the insured] committed an intentional act. The fact that the jury found that [the insured] committed the homicide in the heat of passion does not render the criminal conduct involuntary. Rather it simply reduced the crime from murder to manslaughter.

*Id.* This Court finds *Figueroa* instructive here.

Arizona has specifically adopted *Ruvolo's* reasoning and applied its test in determining when otherwise intentional conduct is considered unintentional for purposes of insurance coverage. *See Globe American Cas. Co. v. Lyons,* 131 Ariz. 337, 340, 641 P.2d 251, 254 (1982).[2] Under New Jersey law, "adequate provocation" can be established if the provocation was sufficient to arouse the passions of an ordinary person so that he loses self control. *See State v. Jumpp,* 261 N.J.Super. 514, 619 A.2d 602 (N.J.Super.A.D.1993). The adequate provocation instruction given at Poer's criminal trial is similar to New Jersey's. Thus, the Court finds that *Figueroa's* analysis and conclusion that adequate provocation does not negate intent for purposes of an intentional act exclusion is persuasive authority. *See Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980) (in the absence of controlling state law, a federal court may look to well-reasoned decisions from other jurisdictions).

Here, the jury found that Poer's conduct was an intentional or knowing act committed in the heat of passion. What the heat of passion element allowed the jury to do was reduce what otherwise might have been first or second degree murder to voluntary manslaughter. Thus, while the jury found that Mrs. Poer "adequately provoked" Poer into shooting her, it also found that he acted "consciously and as a result of effort and determination." DSOF, Ex. 4 at 23:21–25. The jury found that he acted "intentionally" or "knowingly" when he shot her. This is sufficient to establish that Poer committed an intentional act and the fact that he committed it in the heat of passion did not render his criminal conduct involuntary.

At oral argument, Plaintiffs urged the Court to certify this question to the Arizona Supreme Court. Plaintiffs assert that certification is proper because the appellate decisions of *K.B.* and *Western Agricultural* are not controlling authority.

In a diversity case, it is axiomatic that a federal district court must first look to the law of the state's highest court to determine what the state of the law is and to apply it. *West v. American Tel & Tel Co,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In the absence of a decision by the state's highest court, "this court looks to decisions by intermediate appellate state courts for guidance." *Insurance Co. of the State of Pennsylvania v. Associated International Insurance Co.,* 922 F.2d 516, 520 (9th Cir.1990). A decision by an intermediate appellate court may not be disregarded by this Court "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West,* 311 U.S. at 237, 61 S.Ct. at 183.

The parties have not cited, and the Court is unaware of any Arizona Supreme Court case which addresses the preclusive effect of a criminal conviction under A.R.S. § 13–807. Thus, there is no supreme

---

2. *Lyons* adoption of *Ruvolo* has been recognized by other Arizona cases. *See, e.g., Western Agricultural Ins. v. Brown,* 1998 WL 778014 (Ariz.Ct.App.1998); *Republic Ins. Co. v. Feidler,* 193 Ariz. 8, 969 P.2d 173 (App. 1998); *K.B. v. State Farm Fire and Cas. Co.,* 189 Ariz. 263, 941 P.2d 1288 (Ariz.Ct.App. 1997); *Republic Ins. Co. v. Feidler,* 178 Ariz. 528, 875 P.2d 187 (App.1993); and *St. Paul Property and Liability Ins. Co. v. Eymann,* 166 Ariz. 344, 802 P.2d 1043 (Ap.1990).

court decision which is inconsistent with *K.B.* or *Western Agricultural.* Intermediate appellate courts are courts of record and therefore, binding on this Court. It does not matter whether the Arizona Supreme Court may at some later time announce a rule of law contrary to this Court's decision today. Such a possibility is pure conjecture and may not be relied upon by this Court to apply a different rule, no matter how desirable it may believe it to be. *West,* 311 U.S. at 238, 61 S.Ct. at 184.

### III.

### *Household Exclusion and Amber Cretens' Claim*

The Court recognizes that based on the foregoing conclusion, it need not reach a decision with respect to the impact of the household exclusion to Amber Cretens' claim. In the interests of a complete opinion, and because this Court disagrees with the conclusion of the magistrate judge, the Court rules as follows:

State Farm argues that Amber's claim is precluded because the Policy does not provide coverage for claims brought by one insured against another insured. It is undisputed that Amber is an insured under the Policy.

The magistrate judge found that it was a question of fact as to whether this exclusion is unenforceable based on the reasonable expectations of the average insured. Report at 30. State Farm objects to this conclusion because it would essentially allow a jury to ignore an insured's expectations to confer coverage under the reasonable expectations doctrine, if in the jury's opinion, the "average insured" would have expected coverage.

 Household exclusions of this type have been held unambiguous and not violative of Arizona public policy. *See, e.g., State Farm Fire & Casualty Co. v. Powers,* 163 Ariz. 213, 786 P.2d 1064 (App. 1989). Such non-negotiated clauses, however, may be unenforceable based on the insured's reasonable expectation of coverage. *Broemmer v. Abortion Services of Phoenix, Ltd.,* 173 Ariz. 148, 151–52, 840 P.2d 1013, 1016–17 (Ariz.1992); *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 389–94, 682 P.2d 388, 394–99 (Ariz.1984).

In this case, Poer's deposition testimony reveals:

Q. ... you knew as a general proposition that there are exclusions in homeowners insurance policies?

A. Sure.

Q. Not everything is covered?

A. Right.

*See* Jeffrey Poer Deposition at 75:17–22. He was aware that with respect to liability coverage there were exclusions, but he did not recall was specific exclusions existed in his policy. *Id.* at 76:9–20. With respect to liability coverage for killing his wife, he testified:

Q. When you purchased the homeowners insurance from State Farm in May of 1992, did you have any expectation that if you ever killed your wife and your wife's parents and Amber sued you, that State Farm would provide coverage for their claims against you?

A. No sir. I certainly didn't ever think I would harm anybody.

Q. And if I understand that response, since you never thought you would harm anyone when you were purchasing the insurance, you had no expectation that if you killed your wife and her parents and Amber filed a lawsuit against you, that State Farm would provide coverage for you?

\* \* \* \* \* \*

A. No.

*Id.* at 79:10–80:1. Poer testified that he needed insurance coverage to purchase his home. Thus, he would have purchased the State Farm policy even if the agent had specifically informed him of the household exclusion. *Id.* at 80:8–14 and 80:15–22. In fact,

THE WITNESS: ...—I was surprised that State Farm was representing me to begin with....

\* \* \* \* \* \*

Q. Why were you surprised?

A. Because I figured that I was go—I was on my own in a lawsuit

*Id.* at 90:9–23. At the time Poer signed the Damron agreement[3] assigning his rights to Mrs. Poer's family to bring this action, he did not believe State Farm had treated him unfairly. *Id.* at 93:18–23.

■ This testimony differs sharply from the testimony of the insured in *Averett v. Farmers Insurance Company of Arizona*, 177 Ariz. 531, 869 P.2d 505 (Ariz.1994). There the Arizona Supreme Court found it significant that had the insured known of the household exclusion, he would have opted to shop elsewhere. *Id.* at 534, 869 P.2d at 508. The *Averett* insured wanted and believed he had purchased "full coverage." *Id.* Based on the insured's testimony, the supreme court found in *Averett* that "reasonable persons could differ on the factual issues presented here" and the circumstances presented a "debatable question." *Id. Averett* noted that their "decision should not be read to mean that a household exclusion is unenforceable under all circumstances." *Id.* Rather:

> [w]hen an exclusion, limitation or escape clause runs contrary to what a reasonable insured would expect, or when it significantly diminishes coverage that the policy purports on its face to provide, *the surrounding facts and circumstances must be considered* to determine whether, and to what extent, there was a meeting of the minds between the contracting parties.

*Id.* (emphasis added). Thus, the reasonable expectation doctrine should be substituted only when there is a conflict between the coverage offered and what the insured believed he was getting. Based on Jeffrey

Poer's testimony, the surrounding facts and circumstances in this case do not present the *Averett* kind of debatable question. Poer did not expect coverage for Amber if he shot his wife. As such, State Farm is entitled to judgment as a matter of law with respect to Amber Cretens' claim and the household exclusion clause.

## IV.

### Constitutionality of A.R.S. 13–807

As a final matter, Plaintiffs' attempt to challenge the constitutionality of § 13–807. This issue was not argued in their response to Defendants' summary judgment motion and is raised for the first time here, six months after the dispositive motion deadline. Even if the argument had merit, it is untimely.

Plaintiffs attempt to assert that § 13–807 is unconstitutional because by enacting it, the legislature infringed on the Arizona Supreme Court's rule-making authority. That is, that section 13–807 is a procedural rule rather than substantive law. Plaintiffs also assert that it infringes on their right to a jury trial.

■ State Farm correctly responds that the section 13–807 is substantive law and well within the Arizona's legislature law making authority. *State of Arizona v. Superior Court of Arizona*, 154 Ariz. 574, 576, 744 P.2d 675 (1987). Substantive rights are defined as "that part of the law which creates and defines rights, whereas the procedural law prescribes the method by which a substantive law is enforced or made effective." *Roddy v. County of Maricopa*, 184 Ariz. 625, 627, 911 P.2d 631 (App.1996).

■ The Ninth Circuit has recognized that a district court sitting in diversity must apply the substantive law as it relates to collateral estoppel of the state in which it sits. *Lombardi v. City of El*

---

**3.** A Damron agreement occurs when an insurer refuses to defend an insured in a lawsuit. Faced with the risk of personal liability, the insured/defendant settles that case for a specific amount and then assigns to the plaintiff whatever claims the insured has against the insurer for failing to defend the lawsuit. In consideration, the plaintiff enters into a "Damron Agreement" not to execute against the insured. *See Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (Ariz.1969).

*Cajon,* 117 F.3d 1117, 1121 (9th Cir.1997) (applying California substantive law of collateral estoppel in diversity action). The Ninth Circuit thus considers the doctrine of collateral estoppel a matter of substantive law. Such a conclusion is supported in this case.

Arizona's section 13–807 limits a party's substantive rights concerning essential allegations previously adjudicated. Significantly, it does not set forth a procedure or method by which a litigant's rights are enforced. Under Article 6, Section 5 of the Arizona Constitution, the Arizona Supreme Court has the power to make rules relative to all procedural matters. As Plaintiffs recognize, this includes the authority to establish rules of evidence. *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 444–46, 719 P.2d 1058, 1060–61 (Ariz.1986). Section 13–807 concerns an issue of substantive law, to wit, the collateral effect of a former judgment, rather than an evidentiary issue.

▪ Finally, Plaintiffs complain that section 13–807 violates their right to a jury trial. This argument ignores the fact that as assignees, Plaintiffs merely stand in the shoes of Jeffrey Poer. They hold no greater rights than he. *See, e.g., Stephens v. Textron, Inc.,* 127 Ariz. 227, 230, 619 P.2d 736, 739 (Ariz.1980) (assignee "can stand in no better position than the assignor"). Poer had his day in court before a jury where he litigated his capacity to commit the crime at issue.

## V.

### Conclusion

State Farm is entitled to judgment as a matter of law as to breach of contract claim based on the intentional act exclusion. Alternatively, individual plaintiff Amber Cretens' claim is barred by the household exclusion.

**THEREFORE IT IS ORDERED** that the Magistrate Judge's Report and Recommendation is **REJECTED** and Defendant State Farm's Motion for Partial Summary Judgment on Plaintiffs' breach of contract claim is **GRANTED.**

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' BAD FAITH CLAIM

On March 1, 1999, this Court granted State Farm's motion for partial summary judgment on Plaintiffs' breach of contract claim based on the intentional act and household exclusions clauses. The Court found that based on Jeffrey Poer's criminal conviction and the statutory estoppel of A.R.S. § 13–807, there is no coverage under the State Farm policy under the intentional act exclusion. Alternatively, the Court held that the household exclusion barred the claim of Plaintiff Amber Cretens. *See Cretens v. State Farm Fire & Casualty Company,* 1999 WL 241091 (D.Ariz.1999).

After that decision, the only remaining claim concerned whether State Farm acted in bad faith when it withdrew its defense of Jeffrey Poor and then refused to settle with Plaintiffs' claims for the policy limits. State Farm now moves for summary judgment on the bad faith claim arguing that it is entitled to judgment as a matter of law based on: (1) this Court's March 1, 1999 decision finding no coverage; (2) the fact that State Farm acted reasonably in denying coverage; and (3) the fact that Plaintiffs have sustained no damages as a result of State Farm's alleged bad faith.

▪ Plaintiffs agree that State Farm is entitled to summary judgment on the bad faith claim based on this Court's finding of no coverage. Plaintiffs argue, however, that if they are successful on appeal, then State Farm can be held liable for bad faith and that the bad faith claim cannot be dismissed as a matter of law. Plaintiffs contend that material questions of fact exist as to whether State Farm violated its duty of good faith and fair dealing when it did not give "equal consideration" to Jeffrey Poer's interests in refusing to settle with Plaintiffs for the policy limits. *See Clearwater v. State Farm Mutual Automobile Insurance Company,* 164 Ariz. 256,

260–61, 792 P.2d 719, 723–24 (Ariz.1990) (holding that Arizona law requires in third-party cases that an insurer give "equal consideration" to the interests of its own and the insured in deciding whether to accept or reject a settlement offer). According to Plaintiffs, State Farm's bad faith conduct exposes Poer to the $1.5 million judgment when Plaintiffs were willing to settle for $100,000.

While State Farm urges the Court to take the next step and find that based on the evidence it acted reasonably, the Court declines to do so. Given Plaintiffs' concession,

**IT IS HEREBY ORDERED** that Defendant State Farm's Motion for Summary Judgment on the Bad Faith claim is **GRANTED** based solely on this Court's March 1, 1999 Order.

This concludes all pending matters in this case. Accordingly,

**IT IS FURTHER ORDERED** that Trial set for October 4, 1999 is **VACATED;**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant State Farm Fire & Casualty Company and against Plaintiffs James Cretens, Bonita Cretens and Amber Cretens as to all claims.