150 P.3d 275

**STATE FARM FIRE & CASUALTY INSURANCE COMPANY, an Illinois corporation, Plaintiff/Appellant,**

v.

**Barbara GRABOWSKI, individually and as a Personal Representative of the Estate of Victoria D. Hedge, Defendant/Appellee.**

**No. 1 CA–CV 05–0494.**

Court of Appeals of Arizona, Division 1, Department E.

Redesignated as Opinion and Amended by Order Jan. 29, 2007.

Jan. 30, 2007.

---

190

David M. Bell & Associates, PLLC By David M. Bell, Phoenix, Attorney for Plaintiff/Appellant.

Burch & Cracchiolo PA By Daryl Manhart, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

TIMMER, Presiding Judge.

¶ 1 State Farm Fire & Casualty Insurance Company appeals a jury verdict finding that Barbara Grabowski had met her burden to show that an insurance policy exclusionary clause violated the insured's reasonable expectations and therefore was unenforceable. State Farm contends the trial court improperly instructed the jury regarding the doc-

trine of reasonable expectations. For the reasons that follow, we agree and therefore reverse and remand this case for a new trial.

## BACKGROUND

¶ 2 James Hedge III and his wife, Victoria, were killed in a single-vehicle automobile accident. State Farm insured the 1996 Ford Explorer in which the Hedges were riding under a basic vehicle liability policy with limits of $100,000/$300,000.[1] State Farm also insured the Hedges under an umbrella policy, which provided additional liability coverage of $2 million.

¶ 3 Barbara Grabowski, Victoria's mother and a statutory beneficiary, asserted a claim for Victoria's wrongful death against the Estate of James Hedge. State Farm denied coverage under the umbrella policy based upon an exclusion not contained in the basic policy and sought a declaration that the umbrella policy did not provide coverage for Grabowski's claim. Grabowski counterclaimed for a declaration that the umbrella policy provided coverage for her claim.[2]

¶ 4 The umbrella policy provided: "If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** …." The term loss was defined, in relevant part, as, "an accident … which results in **bodily injury** …." The policy defined bodily injury as:

physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

¶ 5 The umbrella policy contained sixteen exclusions from coverage, including Exclusion Ten, as amended by endorsement, which reads:

We will not provide insurance: …

10. for **bodily injury** or **personal injury** to the **named insured,** spouse, or anyone within the meaning of part a. or b. of the definition of **insured** ….

Insured was defined, in pertinent part, as (a) the named insured and (b) residents of the

---

1. State Farm Mutual Automobile Insurance Company issued the basic vehicle liability policy.

2. For purposes of the insurance coverage litigation, it was assumed that James' negligence caused the accident.

named insured's household who were also the named insured's relatives. James and Victoria Hedge were the named insureds.

¶ 6 State Farm and Grabowski filed cross-motions for summary judgment on the coverage issue. State Farm argued that the policy excluded coverage for damages suffered by *any* person if those damages arose from the bodily injury of a named insured. Grabowski countered that the exclusion did not operate to bar her claim for Victoria's wrongful death because Grabowski had suffered the injury, and she was not an excluded insured. The trial court granted summary judgment for Grabowski, ruling that the umbrella policy provided coverage, and that Exclusion Ten did not defeat that coverage because Grabowski was not a member of the insureds' household, and her injury was only indirectly the result of the injury to Victoria. We reversed the trial court's ruling on appeal, holding that the named insured exclusion, if enforceable, would preclude coverage of Grabowski's claim because it arose from Victoria's death and was excluded from coverage because Victoria was a named insured. *State Farm Fire & Casualty Ins. Co. v. Grabowski*, 1 CA–CV 02–0572 at ¶ 20 (Ariz. App. May 29, 2003).

¶ 7 Grabowski urged us to affirm the summary judgment on the alternative basis that Exclusion Ten could not be enforced as a matter of law under the reasonable expectations doctrine. We held that disputed issues of material fact precluded summary judgment on that issue and remanded the case with instructions to the trial court to enter partial summary judgment for State Farm unless the trier of fact determined that Exclusion Ten was unenforceable by virtue of the reasonable expectations doctrine. *Id.* at ¶¶ 34–35.

¶ 8 After remand, the trial court held a trial on the issue of reasonable expectations. State Farm requested that the trial court instruct the jury based on Revised Arizona Jury Instruction Contract 25 ("RAJI 25"):

> When someone signs an agreement and has reason to know that what that person is signing is a standardized, form agreement which is regularly used in that kind of transaction, he or she is bound by its

terms regardless of whether he or she actually read or understood those terms. There is an exception to the rule I just stated. If you find that State Farm had reason to believe that the Hedges would not have signed the standardized agreement if the Hedges had known that a particular term was there, and if you find that the Hedges were in fact unaware that the particular term was there, that term is not part of the agreement and the Hedges are not bound by it.

¶ 9 Grabowski objected, arguing that the reasonable expectations doctrine would preclude enforcement of Exclusion Ten if the jury found any of three specific factual circumstances existed, and offered her own instruction. The trial court gave the jury Grabowski's proffered instruction:

> The reasonable expectations doctrine will prevent the named "insured/household resident exclusion" in the umbrella or excess policy (the "PLUP") from being enforced only if you find from the evidence that Defendant, Barbara Grabowski has proved one or more of the following circumstances:
>
> 1. The insured did not receive full and adequate notice of the exclusion in question, and the exclusion is either unusual or unexpected, or one that emasculates apparent coverage; *or*
>
> 2. Some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; *or*
>
> 3. Some activity which can be reasonably attributable to the insurer induced the Hedges reasonably to believe that they had coverage, even though such coverage otherwise would be excluded by the named "insured/household resident exclusion".
>
> If you find that Defendant, Barbara Grabowski has met her burden of proof and that the "insured/household resident exclusion" *should not* be enforced then your verdict must be for the defendant, Barbara Grabowski.
>
> If you find that, Defendant Barbara Grabowski has failed to meet her burden of proof, then the "insured/household resident

exclusion" must be enforced and your verdict must be for State Farm Fire & Casualty Insurance Co.

¶ 10 The jury returned a verdict in favor of Grabowski, finding that the doctrine of reasonable expectations prevented enforcement of Exclusion Ten. The jury also answered a special interrogatory posed by the trial court, stating that a reasonable consumer under the facts and circumstances of this case would not have purchased the umbrella policy if he or she had known it contained Exclusion Ten. After the trial court entered judgment on the jury's verdict, this timely appeal followed.[3]

## DISCUSSION[4]

■ ¶ 11 State Farm argues that the trial court's jury instruction regarding the doctrine of reasonable expectations was a prejudicial misstatement of the law because it (1) did not tell the jury that Exclusion Ten is presumptively valid and enforceable and (2) did not state that Exclusion Ten would apply only if State Farm knew that the Hedges would not have agreed to the exclusion if they had known it was included in the umbrella policy. State Farm further contends that the trial court erred by refusing to give State Farm's proffered instruction on this issue.

■ ¶ 12 As an initial matter, Grabowski argues that State Farm failed to preserve this issue for appeal because State Farm did not move for a new trial. Because State Farm's argument concerns the legality of the challenged instruction, rather than whether evidence supported the instruction, and State Farm objected to the instruction at trial, it may properly raise this issue on appeal even in the absence of a motion for new trial. *Lewis v. S. Pac. Co.*, 105 Ariz. 582, 583, 469 P.2d 67, 68 (1970) (stating a party need not move for new trial in order to preserve ap-

pellate review of the legality of the instructions given by the trial court).

■ ¶ 13 We review jury instructions as a whole to determine whether the jury was properly guided in its deliberations. *Pima County v. Gonzalez*, 193 Ariz. 18, 20, ¶ 7, 969 P.2d 183, 185 (App.1998). An instruction will warrant reversal only if it was both harmful to the complaining party and directly contrary to the rule of law. *AMERCO v. Shoen*, 184 Ariz. 150, 159–60, 907 P.2d 536, 545–46 (App.1995) (finding no error in instructions that, viewed as a whole, gave jury proper rules to be applied and did not suggest conclusion contrary to law). We will not overturn a jury verdict on the basis of an improper instruction unless there is substantial doubt regarding whether the jury was properly guided in its deliberations. *Barnes v. Outlaw*, 188 Ariz. 401, 405, 937 P.2d 323, 327 (App.1996), *aff'd in part and rev'd in part on other grounds*, 192 Ariz. 283, 964 P.2d 484 (1998).

■ ¶ 14 The reasonable expectations doctrine relieves an insured from "certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (1984); Restatement (Second) of Contracts ("Restatement") § 211 (1981). This doctrine, however, requires more than the insured's "fervent hope" that coverage exists, and therefore only applies under certain limited circumstances. *Darner*, 140 Ariz. at 390, 682 P.2d at 395.

¶ 15 The Arizona Supreme Court first articulated this doctrine, and adopted the Restatement approach to standardized contracts, in *Darner*. 140 Ariz. at 394, 682 P.2d at 399. In that case, after an automobile

---

**3.** Before trial, State Farm moved for summary judgment on the ground that the doctrine of reasonable expectations did not defeat Exclusion Ten. The trial court denied State Farm's motion. State Farm challenged this ruling in the current appeal, but we previously dismissed that portion of the appeal because the denial of a summary judgment motion may not be reviewed from a final judgment entered after a trial on the merits. *John C. Lincoln Hosp. & Health Corp. v. Marico-*

*pa County*, 208 Ariz. 532, 539, ¶ 19, 96 P.3d 530, 537 (App.2004).

**4.** Although the parties cite extensively from the trial transcript in their appellate briefs, neither party provided the transcript as part of the record on appeal. *See* ARCAP 11(b) (explaining duty on parties to provide record on appeal). Therefore, we do not consider it.

lessee injured a pedestrian while driving the leased vehicle, the lessee sought coverage under an insurance policy obtained by the lessor. *Id.* at 386, 682 P.2d at 391. Although the insurance policy provided only $15,000 of coverage to lessees, the lessor had an additional, umbrella policy that provided $100,000 of coverage. *Id.* The insurer denied coverage under the umbrella policy because lessees were not insureds as the umbrella policy defined that term. *Id.*

¶ 16 The trial court entered summary judgment for the insurer. *Id.* The court of appeals affirmed, holding that the insured's failure to read the policy precluded recovery. *Id.* at 386–87, 682 P.2d at 391–92. The Arizona Supreme Court reversed, adopting the doctrine of reasonable expectations as set forth in Restatement § 211:

Standardized Agreements

(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

(2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

(3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

*Darner,* 140 Ariz. at 391, 682 P.2d at 396.

■■■ ¶ 17 The supreme court reasoned that adoption of the Restatement approach would accommodate the needs of commerce by allowing enforcement of standardized contracts, which are often signed unread, but requiring drafters of such contracts to refrain from inserting unconscionable provisions. *Id.* at 393–94, 682 P.2d at 398–99. Specifically, if the drafting party had "reason to believe" that the signing party would not have accepted a particular term, the court may strike that term from the agreement. *Id.* at 391, 682 P.2d at 396; *Gordinier v. Aetna Cas. & Sur. Co.,* 154 Ariz. 266, 272, 742 P.2d 277, 283 (1987); *Harrington v. Pulte Home Corp.,* 211 Ariz. 241, 247, ¶ 18, 119 P.3d 1044, 1050 (App.2005); Restatement § 211(3). The drafter's reason to believe that the signing party would not have assented to the term may be (1) shown by the parties' prior negotiations, (2) inferred from the circumstances of the transaction, (3) inferred from the fact that the term is bizarre or oppressive, (4) inferred from the fact that the term eviscerates the non-standard terms to which the parties explicitly agreed, or (5) inferred if the term eliminates the dominant purpose of the transaction. *Darner,* 140 Ariz. at 392, 682 P.2d at 397 (quoting Restatement § 211 cmt. f). An inference that the drafter knew the signing party would not have agreed to the term may be reinforced if the signing party never had an opportunity to read the term or if it is illegible or otherwise hidden from view. *Id.* at 392, 682 P.2d at 397.[5] Thus, in determining whether a standardized contract term should be enforced, a court will focus on the drafter's behavior and grant relief to remedy overreaching by the drafter. As explained, circumstantial evidence is critical to such a determination.

¶ 18 State Farm argues that the trial court improperly failed to give State Farm's requested jury instruction, based on RAJI 25, which is derived from *Darner* and Restatement § 211. State Farm additionally contends that the trial court erred by adopting Grabowski's proffered instruction because the instruction erroneously failed to inform the jury that State Farm must have had a reason to believe that the Hedges would not have purchased the umbrella policy if they had known that it included Exclusion Ten.[6]

---

5. The court must also consider any other factors relevant to what the signor reasonably expected in the contract. *Harrington,* 211 Ariz. at 248, ¶ 19, 119 P.3d at 1051; *Darner,* 140 Ariz. at 393, 682 P.2d at 399.

6. State Farm also complains that the challenged instruction failed to tell the jury that Exclusion Ten is presumptively valid and enforceable. The court instructed the jury, however, that Exclusion Ten must be enforced if Grabowski failed to

¶ 19 Grabowski responds that the trial court properly instructed the jury based on our prior memorandum decision in this case and on *Averett v. Farmers Insurance Co. of Arizona*, 177 Ariz. 531, 869 P.2d 505 (1994). In our earlier decision remanding this case for trial, we held that material questions of fact existed as to three circumstances described in *Averett* that might justify invalidating Exclusion Ten.[7] 1 CA–CV 02–0572 at ¶ 34. The trial court instructed the jury that if it found that Grabowski had proven any of these factual circumstances, Exclusion Ten should not be enforced, and the jury must return a verdict for Grabowski.

¶ 20 The Arizona Supreme Court in *Averett* synthesized those cases in which Arizona courts have precluded enforcement of a standardized contract term:

(1) When a reasonably intelligent consumer cannot understand the policy language;

(2) When an insured does not receive full and adequate notice and the provision is unusual, unexpected, or emasculates apparent coverage;

(3) When some activity reasonably attributable to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or

(4) When some activity reasonably attributable to the insurer had induced an insured to reasonably believe that coverage exists, although the policy clearly denies such coverage.

*Id.* at 533, 869 P.2d at 507. The *Averett* court did not intend these scenarios to constitute a full and fair explanation of Arizona law regarding the reasonable expectations doctrine. The court explicitly stated that it did not intend to "extend or expand upon" the doctrine of reasonable expectations as discussed in *Darner* and *Gordinier* and held only that under the facts of that case, summary judgment for the insurer was not appropriate because questions of fact existed as to the insured's reasonable expectations. *Averett*, 177 Ariz. at 534–35, 869 P.2d at 508–09. The court in *Averett* did not change the formula set forth in *Darner* and reaffirmed

in *Gordinier*, but only illustrated situations in which the doctrine had been held to apply.

■ ¶ 21 The trial court's jury instruction was erroneous because the factual scenarios set forth in the instruction illustrate some of the *circumstances* under which the reasonable expectations doctrine may be applied, but did not explain the *principles* the jury was bound to apply to determine whether Exclusion Ten violated the Hedges' reasonable expectations. "The purpose of jury instructions is to explain the applicable law to the jury in terms that it can understand." *Cotterhill v. Bafile*, 177 Ariz. 76, 79–80, 865 P.2d 120, 123–24 (1993). Here, the trial court did not instruct the jury that an essential element of its inquiry was whether State Farm had "reason to believe" that the Hedges would not have agreed to Exclusion Ten if they had been aware of its presence in the policy. Restatement § 211(3). Rather, the trial court instructed the jury that it could find the exclusion violated the Hedges' reasonable expectations if (1) the Hedges did not receive full and adequate notice of the exclusion and it was unusual, unexpected, or emasculated apparent coverage, (2) some activity that could be attributed to State Farm would have created an objective impression of coverage in a reasonable insured, or (3) some activity that could be attributed to State Farm induced the Hedges to believe they had coverage despite the exclusion. Accordingly, the instruction was not a proper explanation of Arizona law regarding the doctrine of reasonable expectations. *See Darner*, 140 Ariz. at 391–92, 682 P.2d at 396–97; Restatement § 211.

¶ 22 This instruction would have allowed the jury to conclude that the exclusion violated the Hedges' reasonable expectations if it found that the Hedges did not read the provision and it was "unusual." We recognize that if the jury found that the exclusion was bizarre or unexpected in nature, or commercially unreasonable, it might have inferred that State Farm had "reason to believe" that the Hedges would not have agreed to the exclusion. *Darner*, 140 Ariz. at 391–92, 682

meet her burden of proof. Accordingly, we reject State Farm's contention.

7. We did not direct the trial court to instruct the jury based upon the circumstances set forth in *Averett*.

P.2d at 396–97 (quoting Restatement § 211 cmt. f). Because the trial court did not advise the jury that it was to determine whether State Farm had reason to believe that the Hedges would not have agreed to the exclusion, however, we cannot assume that the jury inferred from the nature of the exclusion that State Farm had reason to believe that the Hedges would not have agreed to the term.

¶ 23 In its response to the special interrogatory, the jury found that a reasonable consumer under the facts and circumstances of this case would not have purchased the umbrella policy if he or she were aware of Exclusion Ten. But the jury did not find that State Farm had reason to believe that the Hedges would not have assented to the policy if they had been aware of Exclusion Ten. The trial court need not instruct the jury on every refinement of law suggested by the parties, *AMERCO*, 184 Ariz. at 156, 907 P.2d at 542, but it must fully and accurately state the law that the jury is to apply. The challenged instruction improperly failed to advise the jury regarding one of the requirements of law, specifically, the requirement that State Farm had reason to believe that the Hedges would not have agreed to Exclusion Ten. Under the circumstances, it is simply not possible to conclude that the jurors found that the legal requirements of the reasonable expectations doctrine were satisfied.

## CONCLUSION

¶ 24 For the foregoing reasons, the trial court erred by giving the jury an instruction that did not fully and correctly state the applicable law. We therefore reverse and remand this case for a new trial. Both parties have requested attorneys' fees on appeal. We deny those requests. When the trial court determines the prevailing party, however, the court may consider the fees and costs incurred by the prevailing party on appeal in determining whether and how much to award as reasonable attorneys' fees.

CONCURRING: PATRICIA K. NORRIS and DIANE M. JOHNSEN, Judges.